1998-NMSC-045

970 P.2d 580

**Elizabeth RASKOB, Plaintiff–Appellant,**

v.

**Gabriel SANCHEZ, Defendant,**

and

**Allstate Insurance Company, Defendant–Appellee.**

No. 24476.

Supreme Court of New Mexico.

Nov. 23, 1998.

Rehearing Denied Dec. 18, 1998.

Janet Santillanes, Albuquerque, for Appellant.

Modrall, Sperling, Roehl, Harris & Sisk, Lisa Mann Burke, Jennifer A. Noya, Albuquerque, for Appellee.

## OPINION

McKINNON, Justice.

{1} Plaintiff–Appellant Elizabeth Raskob sued Defendant Gabriel Sanchez for injuries sustained in an automobile collision in 1992, joining Allstate Insurance Company, his liability insurer, as a defendant. The trial court dismissed Allstate as an improper party to the lawsuit. Plaintiff appeals, arguing that she has a direct claim against the defendant's insurer under New Mexico's Mandatory Financial Responsibility Act, NMSA 1978, §§ 66–5–201 to –239 (1978, as amended through 1991, prior to 1998 amendments) and our decision in *England v. New Mexico State Highway Commission*, 91 N.M. 406, 575 P.2d 96 (1978). We accepted certification of this question from the Court of Appeals. We hold that the insurer was a proper defendant under the circumstances of this case, and therefore reverse.

## DISCUSSION

{2} Central to this case is the legal effect of the New Mexico Mandatory Financial Responsibility Act. The Act requires owners and operators of motor vehicles to either insure against liability with a minimum policy limit of $25,000 for the bodily injury or death of one person, $50,000 for the bodily injury or death of two or more persons, and $10,000 for property damage, or to post a surety bond or cash deposit of $60,000. NMSA 1978, § 66–5–208 (1983). The legislative purpose of the Act is to:

require and encourage residents of the state of New Mexico who own and operate motor vehicles upon the highways of the state to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle. It is the intent that the risks and financial burdens of motor vehicle accidents be equitably

distributed among all owners and operators of motor vehicles within the state.

NMSA 1978, § 66–5–201.1 (1983, prior to 1998 amendment). "This statement of legislative purpose reflects the view that the required automobile liability insurance is for the benefit of the public generally, innocent victims of automobile accidents, as well as the insured." *Allstate Ins. Co. v. Jensen*, 109 N.M. 584, 587, 788 P.2d 340, 343 (1990). Plaintiff argues that the Act's requirements and purpose make it proper to join her tortfeasor's insurer.

{3}    The general rule is that there is no privity between an injured party and the insurer of the negligent defendant in the absence of a contractual provision or statute or ordinance to the contrary; therefore, the injured party has no claim directly against the insurance company. *See* 7 Lee R. Russ with Thomas F. Segalla, *Couch on Insurance 3d* § 104:2, at 104–10 to –12 (1997). However, where the insurance coverage is mandated by law for the benefit of the public, generally the insurance company *is* a proper party. As we said in *Breeden v. Wilson*,

> an insurance policy procured by force of legislative enactment inures to the benefit of any injured member of the public, and the insurance company is a proper party defendant in a suit for damages by that injured party, unless the statute or ordinance in its terms *negatives the idea of such joinder*.

58 N.M. 517, 524, 273 P.2d 376, 380 (1954) (emphasis added). Thus, joinder will be permitted if 1) the coverage was mandated by law, 2) it benefits the public, and 3) no language of the law expresses an intent to deny joinder. *Anchor Equities, Ltd. v. Pacific Coast Am.*, 105 N.M. 751, 752, 737 P.2d 532, 533 (1987) (stating test from *England v. New Mexico State Highway Comm'n*, 91 N.M. 406, 408–09, 575 P.2d 96, 98–99 (1978)). Allstate concedes that the first two elements are satisfied, but argues that the third is not because the Mandatory Financial Responsibility Act implicitly prohibits joinder. We disagree.

### A.  NO LANGUAGE NEGATES JOINDER.

{4}    In *England*, we held that the following language in our Tort Claims Act expressed an intent to deny joinder: "No action brought pursuant to the provisions of the Tort Claims Act shall name as a party any insurance company insuring any risk for which immunity has been waived by that [A]ct." NMSA 1978 § 41–4–17(C) (1982), *quoted in England*, 91 N.M. at 409, 575 P.2d at 99 (then NMSA 1978, § 5–14–15(C) (1977)).   In contrast, no language in the Mandatory Financial Responsibility Act expresses such an intent, which Allstate concedes.   Therefore, under the test applied in *England*, joinder must be permitted unless we are persuaded to modify the test.

### B.  JOINDER NOT DENIED BY IMPLICATION.

{5}    Allstate argues that the Act *implies* that the Legislature intended to disallow direct actions against insurers.   It claims that since the Act mandates insurance "against loss from liability imposed by law for damages," the Legislature intended to mandate *indemnification* for the injured party or plaintiff, which occurs only after liability has been established by a final judgment.   Thus, Allstate claims that this construction of the Act negates an intent to allow joinder until after liability issues have been decided, and the judgment remains unsatisfied.   We disagree.

{6}    The purpose of compulsory liability insurance is unlike that of indemnification insurance, which simply protects the owner of the vehicle or operator from loss. It generally exists solely for the benefit of the insured.   John Alan Appleman & Jean Appleman, *Insurance Law and Practice*, § 4831, at 416 (1981) (indemnity policy intended to benefit solely the insured).   Compulsory liability insurance, on the other hand, is intended to provide a benefit to the general public.   *Id.* § 4862, at 571 (where statute requires policy, "the policy is deemed to be primarily for the benefit of the general public rather than the insured, and many jurisdictions consequently permit" joinder, citing cases).   Our Act cannot be read as only providing indemnification thereby precluding the joinder of Allstate.   Further, we also

conclude that the Act in effect at the time this claim arose manifests an intent that the liability carrier be joined as a defendant. Section 66–5–221 of the Act (since repealed) provides:

> E. Every certified motor vehicle liability policy shall be subject to the following provisions which need not be contained in the policy:
>
> > (1) the liability of the insurance carrier with respect to the insurance required by the Mandatory Financial Responsibility Act becomes absolute whenever injury or damage covered by the certified motor vehicle liability policy occurs. . . .

NMSA 1978, § 66–5–221(E)(1) (1983) (repealed effective July 1, 1998). Finally, we have previously distinguished an insurance company's liability to pay, which arises after judgment against its insured, from the right to sue the company. *See Lopez v. Townsend,* 37 N.M. 574, 583–84, 25 P.2d 809, 813–14 (1933) (Watson, C.J.) (on rehearing) (distinguishing a carrier's liability to pay after judgment and its "liability to be sued"). Section 66–5–221(E)(1) (1983, before 1998 amendments) provided that a plaintiff's right to sue Allstate became absolute when the accident occurred and the Plaintiff was injured. *Id.* at 584, 25 P.2d at 814. Thus, Allstate may properly be joined as a party defendant.

CONCLUSION

{7}   There is no language in the Mandatory Financial Responsibility Act that negates the joinder of Allstate as a party defendant. We find no reason to modify the *England* elements, *nor* to read the Act as implying that direct actions are improper. To the contrary, the Act effective at the time this suit arose manifests an intent that Allstate is a proper party to this lawsuit. We reverse.

{8}   **IT IS SO ORDERED.**

FRANCHINI, C.J., BACA, MINZNER, and SERNA, JJ., concur.