2002-NMSC-015

46 P.3d 1237

**Joyce L. MARTINEZ, on her behalf and as parent and guardian of Regina Martinez Stransky, a minor child, Plaintiff–Appellee,**

v.

**Marianne Matheny REID and State Farm Mutual Automobile Insurance Company, Defendants–Appellants.**

No. 26,720.

Supreme Court of New Mexico.

May 6, 2002.

Rehearing Denied May 28, 2002.

The Simons Firm, L.L.P., Thomas A. Simons, IV, Charles V. Henry, Santa Fe, NM, for Appellants.

Daniel J. O'Friel, Ltd., Daniel J. O'Friel, Santa Fe, NM, for Appellees.

Berardinelli & Associates, David J. Berardinelli, Santa Fe, NM, Carpenter & Chavez, William H. Carpenter, Albuquerque, NM, for Amicus Curiae New Mexico Trial Lawyers Association.

Jeffries & Rugge, P.C., Ripley B. Harwood, Brian A. Thomas, Dale R. Rugge, Albuquerque, NM, Lee M. Rogers, Jr., Albuquerque, NM, for Amicus Curiae New Mexico Defense Lawyers Association.

## OPINION

MINZNER, Justice.

{1} Defendants Marianne Matheny Reid and State Farm Mutual Automobile Insurance Company appeal from an interlocutory order, properly certified for immediate review, *see* NMSA 1978, § 39-3-4(A) (1999), in which the trial court withdrew an earlier order bifurcating a negligence trial arising from an automobile accident. The Court of Appeals, after accepting certification of the petition for interlocutory review pursuant to Rule 12-203 NMRA 2002, certified the matter to this Court pursuant to Rule 12-606 NMRA 2002. We accepted certification and now reverse the trial court. We are asked to determine what steps a trial court ought to take when a defendant's liability insurance company, joined as a nominal party under *Raskob v. Sanchez,* 1998-NMSC-045, ¶ 3, 126 N.M. 394, 970 P.2d 580, seeks to prevent the court from revealing its presence to the jury until after liability and damages have been established. We conclude that a trial court ought to bifurcate the trial and otherwise prevent the jury from hearing about the presence of insurance at the first stage. We therefore reverse the order withdrawing the earlier bifurcation order and remand this case to the trial court. Our reasons follow.

## I.

{2} Plaintiff Joyce L. Martinez, on her behalf and as parent and guardian of Regina Martinez Stransky, filed a complaint against Defendants, alleging that Reid negligently collided with her car and caused her injury. Early in the course of the proceedings, State Farm filed a pre-trial motion seeking to prohibit disclosure of its presence to the jury, or in the alternative, seeking to bifurcate the trial. In that motion State Farm argued that it was a nominal party joined under *Raskob,* and as such Rule 11-411 NMRA 2002 and *Safeco Ins. Co. v. United States Fid. & Guar. Co.,* 101 N.M. 148, 679 P.2d 816 (1984) precluded the trial court from disclosing its presence to the jury. Rule 11-411 provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, or bias or prejudice of a witness.

*Safeco* held that when cases to which a subrogated insurer is a party are to be tried to a jury, the court shall bifurcate the proceedings, separating the tort and contract issues and preventing the jury from hearing of the presence of insurance until after the tort claims have been resolved. *Safeco,* 101 N.M. at 150, 679 P.2d at 818.

{3} On May 6, 2000, District Court Judge Stephen Pfeffer filed his decision granting Defendant's motion. In that decision Judge Pfeffer stated,

> In order to avoid conflict with the Rules of Evidence, including Rules 11-403 and 11-411, it is the decision of this Court that unless there is a cause of action against the insurance company which should properly be tried with the cause of action against the alleged tortfeasor, the jury is not to be told the name of the insurance company defendant. In effect I am bifurcating the case, and the Court will initially present to the jury only the name of the alleged tortfeasor.

Subsequent to that decision, Judge Pfeffer was reassigned to the criminal docket, and this case was assigned to District Court Judge Carol Vigil. On July 3, 2000, after the

change in judges, Plaintiffs filed a motion to reconsider Judge Pfeffer's earlier decision.

{4} At the hearing on the motion to reconsider, Plaintiffs argued that Rule 11–411, as a rule of evidence, was not applicable because the question was whether the parties to the lawsuit should be disclosed. Plaintiffs also contended that *Safeco's* holding is limited to a plaintiff's first-party insurer that has paid the plaintiff and is exercising its right of subrogation, and should not apply to a third-party or liability insurer whom an injured plaintiff has joined in a lawsuit against the insured defendant. When asked to explain the harm in bifurcation, Plaintiffs argued that there is no provision for that procedure in *Raskob,* that there is no basis in the law for doing so, and that it is too time-consuming.

{5} State Farm repeated its earlier arguments that Rule 11–411 and *Safeco* control and that Plaintiffs had failed to timely respond to the original motion and had thus consented to it. Finally, State Farm argued, for the first time, that it was not a proper party under *Raskob* because the legislature had repealed certain portions of the Mandatory Financial Responsibility Act, NMSA 1978, §§ 66–5–201 to –239 (1978, as amended through 1999) ("the Act"), thus evincing an intent to disallow joinder.

{6} Judge Vigil granted Plaintiffs' motion and withdrew Judge Pfeffer's original order bifurcating the trial. In her oral remarks from the bench, which were followed by a written order, Judge Vigil explained the need to prevent bifurcation: "[W]hat concerns me is the additional time this is going to require and [its effect] on the judiciary. I tell you when I took over the civil docket, it has been rather eye-opening in the number of cases that are filed including insurance companies." At State Farm's request, Judge Vigil certified the issue for interlocutory appeal.

{7} The Court of Appeals accepted the interlocutory appeal and proposed summary reversal. In proposing summary reversal, the Court of Appeals reasoned that *Safeco* required bifurcation when insurance would be disclosed and that *Safeco* was not overruled by *Raskob,* which, in holding a defendant's insurer may be joined, did not mention

disclosure. After receiving Plaintiffs' memorandum in opposition, however, the Court of Appeals certified the matter to this Court. The Court of Appeals perceived a tension between *Raskob, Breeden v. Wilson,* 58 N.M. 517, 273 P.2d 376 (1954), and *Safeco.* Because these cases were decided by the Supreme Court, the Court of Appeals concluded that this was the appropriate forum to resolve the dispute. *See* NMSA 1978, § 34–5–14(C)(2) (1972). We accepted certification because we view the issue of disclosure of insurance as one of substantial public interest, and because we agree that this is the proper forum to resolve the tension in our cases noted by the Court of Appeals. *See id.* For the reasons that follow, we conclude that the Court of Appeals' proposed summary reversal was appropriate. We address State Farm's and Plaintiffs' arguments on appeal in order, but first we state our holding in *Raskob.*

## II.

{8} As a general matter there is no privity between a plaintiff and the defendant's liability insurer, and thus joinder of the insurer is inappropriate. In *Raskob,* however, we held that when a defendant who is compelled by the Act to maintain automobile liability insurance is sued, the defendant's insurer is a proper party to the lawsuit. *Raskob* followed an exception to that rule which had been recognized in *Breeden.* That exception applies when: "1) the coverage was mandated by law, 2) it benefits the public, and 3) no language of the law expresses an intent to deny joinder." *Raskob,* 1998–NMSC–045, ¶ 3, 126 N.M. 394, 970 P.2d 580. Allstate, the defendant's insurer in *Raskob,* had conceded the first two elements; as to the third, the Court concluded that nothing in the Act expressed any intent to deny joinder. The Court declined Allstate's request to modify the third element of the test to disallow joinder if the Act *implied* such an intent. Instead, the Court concluded that Section 66–5–221, which had been repealed but applied to the case at bar, manifested an intent to allow joinder. *Id.* ¶¶ 4–6.

■ {9} State Farm argues on appeal that the repeal of Section 66–5–221, discussed in *Raskob*, indicates that the insurer of a defendant involved in an automobile accident is no longer a proper party to the negligence lawsuit. State Farm argues on this basis that it should be dismissed as a defendant. In addition, State Farm argues that Judge Pfeffer's bifurcation order was appropriate, and Judge Vigil erred in withdrawing it.

### A.

{10} Prior to its repeal, Section 66–5–221 read in relevant part:

E. Every certified motor vehicle liability policy shall be subject to the following provisions which need not be contained in the policy:

(1) the liability of the insurance carrier with respect to the insurance required by the Mandatory Financial Responsibility Act becomes absolute whenever injury or damage covered by the certified motor vehicle liability policy occurs.

NMSA 1978, § 66–5–221(E)(1) (repealed 1998). Because in *Raskob* we concluded that this language evinced an affirmative intent to allow joinder, State Farm argues that we should interpret its deletion as evidence of legislative intent to deny joinder. As further evidence of this legislative intent, State Farm points to the 1998 amendments to the Act's statement of purpose found in Section 66–5–201.1, most importantly the deletion of the following sentence from the end of that section: "It is the intent that the risks and financial burdens of motor vehicle accidents be equitably distributed among all owners and operators of motor vehicles within the state." NMSA 1978, § 66–5–201.1 (repealed 1998).

■ {11} *Raskob* would allow joinder of State Farm if the first two elements of the test quoted above ("the *Breeden* test") are met and there is no express statutory language that negates joinder. *Raskob*, 1998–NMSC–045, ¶ 3, 126 N.M. 394, 970 P.2d 580. Even after the amendments to the Act, State Farm points to no affirmative language that expressly negates joinder. Implying legislative intent in the way urged by State Farm is

at odds with the third prong of the *Breeden* test. We will not imply from the repeal of these provisions of the Act that the legislature intended to negate joinder, without express language so stating. Nor are we persuaded to change the third element of the test in the way urged by State Farm in this case, and by Allstate in *Raskob*. The fact that the Act mandates liability insurance for the benefit of the public creates a strong inference that the legislature intended to allow joinder of the insurance company in a negligence suit. Thus, the *Breeden* test requires express language in the statute itself to overcome this inference. There being no express language in the Act denying joinder, we reject State Farm's argument that it is not a proper party to this lawsuit.

### B.

{12} State Farm's main argument on appeal is that our cases support bifurcation of a negligence case involving insurance, and preventing the jury from hearing about the presence of insurance until liability and damages have been established. In order to answer this argument we must examine the progression of our case law on joinder and disclosure of insurance companies. This progression produced two lines of cases in New Mexico.

{13} The first addresses the insurance company acting as a defendant's liability insurer; the second addresses the insurance company acting as the plaintiff's subrogated insurer. The first line, which culminates in *Raskob*, addresses the joinder of a defendant's liability insurance company in what is sometimes called a direct action against the insurer. *See generally Lopez v. Townsend*, 37 N.M. 574, 25 P.2d 809 (1933); *Breeden*, 58 N.M. 517, 273 P.2d 376; *England v. N.M. State Highway Comm'n*, 91 N.M. 406, 575 P.2d 96 (1978); *Anchor Equities, Ltd. v. Pacific Coast American*, 105 N.M. 751, 737 P.2d 532 (1987). The term "direct action" may be misleading, because these cases generally envision joinder of the insurance company along with the alleged tortfeasor; that is, the plaintiff could not proceed against the insurer alone. *See Lopez*, 37 N.M. at 584, 25

P.2d at 814 ("[T]he result is that there. may be an immediate suit to which both insurer and assured are parties defendant, but not an immediate suit against the insurer alone."); *Breeden*, 58 N.M. at 522, 273 P.2d at 378. *But see Anchor Equities, Ltd.*, 105 N.M. at 752, 737 P.2d at 533 (reversing dismissal of the insurer when, "Without having first brought suit against Title Escrow or its owner/employee, Anchor asserted a direct cause of action against [the insurer] as issuer of the fidelity bond.").

{14} Although none of these cases expressly decide whether joinder of the insurance company requires disclosure to the jury, at least one assumes that it does. In *Breeden*, the Court thought that joinder would necessarily entail disclosure to the jury; in fact, Justice Seymour presents the issue as a policy choice between the right to join and the right of the other party to prevent the jury from hearing about insurance:

> In the light of this approach, it becomes necessary to take one of two positions: (1) That an insurance policy procured by force of legislative enactment inures to the benefit of any injured member of the public, and the insurance company is a proper party defendant in a suit for damages by that injured party, unless the statute or ordinance in its terms negatives the idea of such joinder. (2) That the public policy, bottomed on the theory that the knowledge of the existence of insurance in the minds of a jury or court is prejudicial, remains a policy of sufficient importance and integrity to require that it be preserved unless a proper legislative body clearly expresses its intention to dispense with the protection against prejudice afforded by the exclusion from a case of the knowledge of insurance.

58 N.M. at 524, 273 P.2d at 380. A majority of the court favored the right to join, but Justice Seymour favored the policy of non-disclosure, although he noted that "as time goes on and insurance becomes almost universal, and as juries become more sophisticated, this public policy of which we have spoken [non-disclosure] will lessen in importance." *Id.*

{15} On the other hand, joinder and disclosure of a plaintiff's subrogated insurer is controlled by a different line of cases. This line of cases also seems to have initially assumed that joinder would entail disclosure but later expressly divorced the two concepts. This line began in 1957, when we held that subrogated insurers are not only necessary parties, but also indispensable; thus, the failure to join one is a jurisdictional defect. *Sellman v. Haddock*, 62 N.M. 391, 402–03, 310 P.2d 1045, 1052–53 (1957), *overruled by Safeco*, 101 N.M. at 150, 679 P.2d at 818.

{16} In *Maurer v. Thorpe*, 95 N.M. 286, 621 P.2d 503 (1980), *overruled by Safeco*, 101 N.M. at 150, 679 P.2d at 818, we tried to fix a problem created by *Sellman*. In *Maurer*, the plaintiff's insurance company was disclosed to the jury under *Sellman*, but the defendant's insurance company was not. The *Maurer* Court held "that a plaintiff, who is compelled by law to join his insurer and is then denied the right to name the defendant's insurance carrier as a party-defendant, is prejudiced in presenting his case and that such practice is fundamentally unfair and violates concepts of due process of law." 95 N.M. at 288, 621 P.2d at 505. In other words, insured plaintiffs could be prejudiced by the appearance that they were suing uninsured defendants. To neutralize this prejudice, *Maurer* compelled joinder of the defendant's insurer when the plaintiff is compelled by *Sellman* to join his insurer. Thus, while *Sellman* did not address the issue of disclosure, *Maurer* starts with the premise that joinder would necessarily entail disclosure, and that mutual disclosure would minimize the prejudice to either party.

{17} In *Campbell v. Benson*, 97 N.M. 147, 637 P.2d 578 (Ct.App.1981), *overruled by Safeco*, 101 N.M. at 150, 679 P.2d at 818, the Court determined that the procedural rule created by *Maurer*-joinder of defendant's insurance carrier-was required even when the plaintiff could have signed a loan receipt instead of a subrogation agreement. Notably, the Court clarified the role of the defendant insurance company joined under *Maurer*:

The role of Mountain States [the defendant insurance company] in the action below under the circumstances outlined in *Maurer* is only that of a "nominal party," or "pro-forma party." The requirement that it be joined as a defendant therein neither gives rise to the creation of a direct action against it, nor relegates it to the status of an "interested party" or "indispensable party" from whom any relief can be sought.

*Campbell,* 97 N.M. at 150, 637 P.2d at 581.

{18} Our 1984 opinion in *Safeco* replaced the procedure required by *Maurer* with an alternative one. In *Safeco,* after compensating the insured for injuries sustained in an automobile accident, the plaintiff's insurer brought suit against two defendants and the insurer of one of those defendants; the other defendant had no insurance. The plaintiff's insurer also joined its insured as an involuntary plaintiff to the extent of her $100 deductible. At issue was the propriety of joining and disclosing the defendant insurance company. The Court overruled what it described as the "critically flawed" rule established by the *Sellman—Maurer—Campbell* line of cases, flawed because of the inequity that rule created in the instant case, where the jury was made aware that one defendant was insured and the other was not. Thus, the Court created a new procedure:

In [the] future, when subrogated insurers are required by Civ. P.R. 17 to be joined as a party, and the case is to be tried to a jury, the fact of the insurer's joinder is not to be disclosed to the jury. Instead, the insured party shall assert his claim for all damages recoverable from the one who allegedly caused the harm, including any amount for which his insurer would be entitled to subrogation against the defendant or counter-defendant.... If the injured party or parties should recover damages, the insurer shall then be permitted to prove its subrogation claim to the trial court and, from the proceeds of any recovery, the court shall apportion the recovery between the insured and his insurer according to their respective entitlements.

*Safeco,* 101 N.M. at 150, 679 P.2d at 818. Although as a general matter the decision to bifurcate a trial is entrusted to the trial court's discretion, *Safeco* created a bright line rule of bifurcation. *See also Sena v. N.M. State Police,* 119 N.M. 471, 892 P.2d 604 (Ct.App.1995).

**1.**

{19} On appeal, State Farm argues that Rule 11–411 and *Safeco* require the trial court to prevent the jury from finding out about its presence as Defendant's insurer. Plaintiffs, on the other hand, argue that Rule 11–411, as a rule of evidence, does not affect the decision to let the jury know the parties to a lawsuit, that *Safeco* only requires bifurcation of a trial involving subrogated insurers, and that modern realities minimize the alleged prejudice of which State Farm complains.

{20} Plaintiffs are correct that *Safeco* only expressly requires bifurcation for subrogated insurers. Plaintiffs are also correct that *Safeco* cannot be read as overruling the other line of cases allowing joinder of a defendant's liability insurer. *Anchor Equities, Ltd.,* is an example of this other line of cases. In that case the Court allowed joinder of the liability insurer of an escrow company when the escrow company's owner and sole employee had allegedly absconded with funds placed in a trust account. *Anchor Equities* was decided three years after *Safeco* and was written by the same author. It does not mention *Safeco* and does not require use of the bifurcation procedure when the defendant's liability insurer has been joined as a party. Whether a conscious decision or the result of historical accident, we have in New Mexico different rules of joinder and disclosure of insurance companies depending on whether the company is a defendant's liability insurer or a plaintiff's subrogated insurer.

{21} This case, however, squarely presents the question of whether the *Safeco* procedure for subrogated insurers *should* be applied to a defendant's liability insurance company that has been joined as a party under the *Breeden* test. Here, Plaintiffs' arguments are less persuasive. Plaintiffs argue that Rule 11–411 has no bearing on the question of disclosing to the jury the names of the parties. We are not persuaded.

Nothing in the text of the rule expressly limits its use to the giving of testimony or admission of exhibits or suggests that its principles would not apply to the revelation of the parties to the jury. Additionally, we believe that the rules of evidence are designed to regulate the information presented to the jury, whatever the form. In any event, Rule 11–411 can be read as a strong articulation of the policy that in an ordinary negligence case the presence or absence of insurance is not relevant to the issues that need to be decided by the jury.

{22} Plaintiffs argue that the potential for prejudice to Defendants resulting from disclosure is minimal, noting the following language in *Safeco:*

> Moreover, a somewhat related and significant factor will soon have an effect upon the deliberations of juries. As of January 1, 1984, every motor vehicle subject to registration under the laws of our state, with but few specified exceptions, must either be insured against liability, execute a surety bond, or post a cash deposit for the minimal amount of $60,000. Compulsory insurance may certainly contribute to the modern juror's view that insured parties are not uncommon. Nevertheless, there may be legitimate questions of coverage not at all relevant to the issue of liability which may be overlooked by jurors in their awareness of the statutory requirements for insurance. Thus, evidentiary prejudice must also be assessed in the context of these present-day realities and a juror's possible misconceptions arising from his knowledge of mandatory insurance requirements.

101 N.M. at 152, 679 P.2d at 820 (citations omitted). *See also Breeden,* 58 N.M. at 524, 273 P.2d at 380. Because of our understanding of Rule 11–411, we need not decide whether this prejudice has indeed lessened over time.

{23} We view Rule 11–411 to have foreclosed Plaintiffs' argument that, because of the lessened prejudice of revealing insurance to a jury, disclosure has become appropriate. Because the presence or absence of insurance is not relevant to the issues of liability or damages in the ordinary negligence case,

any prejudice or confusion of the issues, no matter how slight, would require exclusion under ordinary concepts of relevancy. *See* Rule 11–403 NMRA 2002. We read Rule 11–411 as a particularized application of the balancing test required by Rule 11–403, one that reflects a decision that the prejudicial effect of disclosure along with the injection of confusing collateral issues outweighs its probative value. Thus, one commentator notes, "Taking into account the low probative force and the possibility of prejudice, evidence of insurance in an automobile liability case would probably be excluded under Rule 403 even without Rule 411." 2 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 411.02[1], at 411–6 (Joseph M. McLaughlin ed., 2d ed.2002).

{24} Plaintiffs also argue that they will be prejudiced because, without disclosure of the defendant's insurer, the jury may infer that they are suing an uninsured motorist. That, however, is precisely the prejudice identified in *Maurer* which led to its rule of mutual disclosure. 95 N.M. at 287, 621 P.2d at 504. The rule of mutual disclosure required by *Maurer* was replaced by the bifurcation procedure of *Safeco;* Plaintiffs offer no explanation why we should return to *Maurer* when we have already expressed a preferred alternative. In any event, any prejudice arising from jury speculation as to which of the two parties is insured should be cured by an instruction informing the jury that the trial had been bifurcated, that any issues involving insurance will be decided at a later time, and that the jury is not permitted to speculate on the presence of insurance.

{25} Finally, Plaintiffs rely on Judge Vigil's basis for deciding against bifurcation, specifically the additional time it would require and the volume of cases involving insurance companies. Although we are reluctant to increase the burden on our District Courts' dockets, we are not persuaded that the increased burden of bifurcation is significant enough to outweigh the complication of the issues that inevitably result from revealing to the jury the presence of insurance, or to overcome the policy embodied in Rule 11–411. Our rules committee is certainly free to

explore and propose an alternative procedure to the one we announce today.

■ {26} We note that Rule 11–411, by its terms, allows for disclosure of insurance in certain limited circumstances, but none of those circumstances are present in this case. Because we find no prejudice in requiring bifurcation, because our rules of evidence find prejudice and confusion in revealing to the jury the presence of insurance, and because we can perceive no reason to treat a plaintiff's subrogated insurer differently than a defendant's liability insurer, we conclude that the procedure announced in *Safeco* should be used in cases such as this one where the *Breeden* test requires joinder of a defendant's liability insurer. Where, however, Rule 11–411 would allow disclosure of insurance to the jury, the need for bifurcation is diminished, and the trial court would retain discretion not to bifurcate the trial.

### 2.

■ {27} As Plaintiffs point out, the decision whether to bifurcate a trial ordinarily rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *McCrary v. Bill McCarty Const. Co.*, 92 N.M. 552, 554, 591 P.2d 683, 685 (Ct.App.1979). We could, therefore, simply allow trial judges to make these decisions and review them for an abuse of discretion. We decline to do so, and instead we choose to adopt the bright-line rule of *Safeco* in cases such as this one.

{28} In the order certifying this matter to us, the Court of Appeals noted, "It has come to the Court's attention that trial courts across the State are divided in their application of *Raskob*, with some holding that the fact of an insurer's joinder should be disclosed to the jury and others holding to the contrary . . . ." *Reid v. Martinez*, No. 21,705 (N.M.Ct.App. Dec. 18, 2000) (certification order). We think that we are called on in this case to provide guidance to the lower courts, and we cannot provide that guidance by simply affirming or reversing trial decisions as an exercise or abuse of discretion. Additionally, *Safeco* itself created a rule of bifurcation that did not allow for a trial court's discretion in the normal case, and we can see no reason

to treat a defendant's insurance company differently.

### III.

{29} We are not persuaded that we ought to read from the legislative repeal of Section 66–5–221 an affirmative intention to disallow joinder. Such an approach is at odds with the third element of the test for joinder used in *Raskob*, and we see no reason to change the test in this regard. We are persuaded, however, that consistent with Rule 11–411 and *Safeco*, Judge Pfeffer's bifurcation order was appropriate. In the ordinary negligence case tried to a jury where a defendant's liability insurer has been joined, the trial judge should bifurcate the trial and take steps in the first phase to avoid disclosing the presence of insurance to the jury. Where, however, Rule 11–411 would likely allow the disclosure of insurance to the jury, the judge retains discretion to determine whether bifurcation is necessary.

{30} For these reasons, we reverse Judge Vigil's decision to withdraw Judge Pfeffer's original bifurcation order. We remand for further proceedings consistent with this opinion.

{31} **IT IS SO ORDERED.**

WE CONCUR: JOSEPH F. BACA, Justice, GENE E. FRANCHINI, Justice, PATRICIO M. SERNA, Chief Justice (dissenting), PETRA JIMENEZ MAES, Justice (dissenting).

SERNA, Chief Justice (dissenting).

{32} Respectfully, I dissent from the majority opinion. As explained below, I believe that the majority opinion is a step back for New Mexico and disregards the existence of mandatory insurance in this State. "This Court has in the past taken progressive steps in recognizing the need to change and modify legal concepts. Here, in not recognizing the fact that disclosure of the insurance companies as parties is proper and appropriate, the majority has missed an opportunity to do so again." *Safeco Ins. Co. v. United States Fid. & Guar. Co.*, 101 N.M. 148, 153, 679 P.2d 816,

821 (1984) (Stowers, J., dissenting) (citations omitted).

{33} Under our Mandatory Financial Responsibility Act, the Legislature requires all owners and operators of motor vehicles to either purchase liability insurance or to post a surety bond or cash deposit. Rule 1–017(A) NMRA 2002 states that "[e]very action shall be prosecuted in the name of the real party in interest." This Court, in *Breeden v. Wilson*, 58 N.M. 517, 524, 273 P.2d 376, 380 (1954), held that

> an insurance policy procured by force of legislative enactment inures to the benefit of any injured member of the public, and the insurance company is a proper party defendant in a suit for damages by that injured party, unless the statute . . . in its terms negatives the idea of such joinder.

We reaffirmed this principle in *Raskob v. Sanchez*, 1998–NMSC–045, ¶ 3, 126 N.M. 394, 970 P.2d 580 (noting that "where the insurance coverage is mandated by law for the benefit of the public, generally the insurance company *is* a proper party"). "Compulsory liability insurance . . . is intended to provide a benefit to the general public." *Raskob*, 1998–NMSC–045, ¶ 6, 126 N.M. 394, 970 P.2d 580. As the majority notes, joinder is permissible if the coverage was mandated by law, the law benefits the public, and "no language of the law expresses an intent to deny joinder." *Id.* ¶ 3. As in *Raskob*, only the third factor is at issue in the present case. *See id.* The majority expresses that "State Farm points to no affirmative language that expressly negates joinder" and that we require express language to negate joinder. Majority opinion, ¶ 11. I agree. However, from this position, the majority then focuses on our rules of evidence to answer the question of whether joinder necessarily requires disclosure. *See* majority opinion, ¶¶ 19–26.

{34} I believe that once we conclude that our Legislature created mandatory insurance which benefits the public and does not express an intent to deny joinder, then we necessarily conclude that, as a real party in interest, the defendant insurer must be disclosed as a party.

> The Legislature, by authorizing the joinder as party defendants a motor carrier and its insurance carrier, in effect determined that . . . no prejudice results from such joinder. Stated in another way, the Legislature, by authorizing the joinder of the insurance carrier, has in effect, determined that *knowledge of insurance liability is not prejudicial* to the right of the motor carrier or to its insurance carrier.

*Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir.1998) (emphasis added). The Tenth Circuit observed in analyzing an analogous statutory scheme: "We are convinced . . . that here state policy expressed in the Oklahoma statute and interpretations of it by the Oklahoma Supreme Court is involved. [The statute] has been recognized as creating a right to a joint action by an injured party . . ., and in such actions the general rule against references to liability insurance does not apply." *Alexander*, 152 F.3d at 1231. The Tenth Circuit determined that the Oklahoma rule of joinder was a substantive public policy of the state and that it therefore controlled over the merely procedural rule of Rule 411 of the Federal Rules of Evidence. The court noted that "although the application of [this legislative policy] will affect the admissibility of some evidence, [it] in reality serve[s] substantive state policies regulating private transactions." *Id.* I agree and believe that this is consistent with New Mexico precedent. "[U]nder the view we have taken of this case, the question involved is not procedural, but one involving the substantive rights of the parties. The rules are procedural and do not control substantive rights." *Breeden*, 58 N.M. at 525, 273 P.2d at 380.

{35} The majority's decision departs from what I believe is the natural path of our precedent. *See e.g., Breeden*, 58 N.M. at 525, 273 P.2d at 380; *England v. New Mexico State Highway Comm'n*, 91 N.M. 406, 409, 575 P.2d 96, 99 (1978) (holding that, prior to amendment of the Tort Claims Act, joinder of the insurance company as a party defendant is proper). These cases held that the Legislature's passage of mandatory insurance for the benefit of the public created a substantive right in injured members of the public to pursue compensation for their injuries. It seems to me that bifurcation and non-disclosure demotes and diminishes the

right of direct action to a mere procedural right and thus, in effect, reverses our long-standing precedent. As a matter of substantive public policy, as opposed to mere procedure, the question of disclosure is within the province of the Legislature and thus cannot be resolved by Rule 11–411 NMRA 2002.

{36} The majority acknowledges that "at least one [of our prior cases, *Breeden*,] assumes" that "joinder of the insurance company requires disclosure to the jury." Majority opinion, ¶ 14. I believe that a close reading of *Breeden* reveals more than an assumption of disclosure. Rather, *Breeden* implicitly holds that joinder, in a direct action case, requires disclosure; by endorsing bifurcation, the majority overrules *Breeden*. As the majority notes, although Justice Seymour did favor non-disclosure, he wrote that "as time goes on and insurance becomes almost universal, and as juries become more sophisticated, this public policy of which we have spoken will lessen in importance." *Breeden*, 58 N.M. at 524, 273 P.2d at 380. The majority chooses not to reach the question of whether the concern regarding prejudice has "lessened over time," instead basing its conclusion on Rule 11–411. Majority opinion, ¶ 22. I believe that the fact of mandatory insurance compels a conclusion that this prejudice is indeed lessened, and that the Legislature has recognized the lack of prejudice by not explicitly precluding joinder.

{37} I fear that bifurcation and non-disclosure are a retreat to the past. It appears that the single greatest flaw is the assumption that the passage of twenty years with mandatory insurance has had no effect whatsoever on the people of New Mexico. Bifurcation rests on the assumption that jurors remain as uniformed and unsophisticated as jurors of fifty years ago while ignoring the reality that for the past twenty years each of these jurors has been required by New Mexico law to prove to the Department of Motor Vehicles that he or she has purchased valid insurance in order to register his or her vehicle. I believe that the level of awareness of jurors has increased dramatically from 1954 when this Court issued *Breeden*.

{38} Bifurcation and non-disclosure ignores the reality that each juror who has made a car accident claim, whether against the other driver or his or her insurer, must deal with the insurance company and not with the other driver. It is a futile exercise to attempt to hide from the jury the fact of insurance when every juror is presumed to know that by law, the defendant is required to have insurance. I fear that with this ruling, this Court seeks to create the presumption that jurors do not know the law.

{39} Justice Payne expressed,

I disagree ... with the general policy barring the admission of evidence relating to the existence of a defendant's insurance coverage. [The rationale for] this bar, [is] based on the unsubstantiated fear that juries would return verdicts against defendants on insufficient evidence or for larger amounts if they knew the insurance company and not the defendant were to pay. A review of these cases in those states with direct action statutes, like Louisiana and Wisconsin, show these fears to be unfounded. Evidence of insurance coverage should be treated as any other evidence, with its admissibility dependent upon the rules of evidence and not an artificial, absolute bar.

*Maurer v. Thorpe*, 95 N.M. 286, 288, 621 P.2d 503, 505 (1980) (Payne, J., specially concurring) (citation omitted), *overruled by Safeco*, 101 N.M. at 150, 679 P.2d at 818. I agree.

{40} The bifurcation procedure rests on the same rationale I believe this Court rejected in *Raskob*, that the NMFRA indicates that the Legislature intended indemnification and not direct liability.

The purpose of compulsory liability insurance is unlike that of indemnification insurance, which simply protects the owner of the vehicle or operator from loss. It generally exists solely for the benefit of the insured. Compulsory liability insurance, on the other hand, is intended to provide a benefit to the general public. Our Act cannot be read as only providing indemnification thereby precluding the joinder of [the defendant's insurer].... Finally, we have previously distinguished an insurance company's liability to pay, which arises

after judgment against its insured, from the right to sue the company.

*Raskob,* 1998–NMSC–045, ¶ 6, 126 N.M. 394, 970 P.2d 580 (citations omitted). It seems to me that bifurcation is the full equivalent of indemnification. Bifurcation carries the implication that the insurer is not directly liable to the plaintiff until after the jury has first found the insured liable, thus making the insurer only indirectly liable. In other words, if the insured is found liable, bifurcation makes the insurer's liability one of indemnification only. By adopting bifurcation, the majority collapses the above distinction recognized by this Court in *Raskob,* as evidenced by the majority's reference to the insurance company as a nominal party and the majority's decision to equate subrogation with a direct action. Majority opinion, ¶¶ 1, 26. As the majority recognizes, subrogation and direct action principles developed in two separate lines of cases. *Id.* ¶¶ 12–13. I believe that this reflects the policy choice made by the Legislature in direct action cases and is not a mere "historical accident." *See id.* ¶ 20.

{41} As noted above, the majority relies on Rule 11–411 as well as, implicitly, Rule 11–401 NMRA 2002, both rules of evidence, for its holding. Majority opinion, ¶ 23. I believe that the majority improperly expands Rule 11–411. Rule 11–411 simply prohibits evidence of insurance when offered "upon the issue [of] whether the person acted negligently or otherwise wrongfully." The majority has now, I believe, too broadly articulated this rule to mean "that in an ordinary negligence case the presence or absence of insurance is not relevant to the issues that need to be decided by the jury." Majority opinion, ¶ 21. While the presence or absence of insurance coverage itself is certainly irrelevant as to the issue of negligence, the name of a party is not evidence; it is simply the designation of the insurer. The text of the rule is limited to "evidence," so this rule would only apply if a plaintiff attempted to introduce the fact of insurance in the presentation of evidence. The irrebuttable presumption of prejudice in Rule 11–411 is wholly inapplicable in the context of mandatory insurance. Because the Legislature has mandated this type of insurance, I believe that our jurors are already well aware of the existence of the defendant's insurer and thus there is no need to artificially shroud the name of the insurance company in secrecy.

{42} Finally, I am also concerned that bifurcation is constitutionally impermissible because it treats insurance companies differently from other parties.

In other types of cases, disclosure of the joinder of the real party in interest has never been an issue. For reasons that may never have been valid, insurance has been an exception. Once properly joined, a party should not be given a special non-disclosure status. Nevertheless, the majority allows the fact of the insurer's joinder to remain unknown to the jury. It is time we recognize that an insurance company is no different and should be treated no differently.

*Safeco,* 101 N.M. at 153, 679 P.2d at 821 (Stowers, J., dissenting).

{43} I would hold that a joined insurance company should be disclosed to the jury. The majority concluding otherwise, I respectfully dissent.

I CONCUR: PETRA JIMENEZ MAES, Justice.