2003-NMCA-137

80 P.3d 490

**Evangeline Trujillo ROMERO and Jeff Romero, Plaintiffs–Appellants,**

v.

**PUEBLO OF SANDIA/SANDIA CASINO and Cigna Property And Casualty Company, Defendants–Appellees.**

**No. 23,142.**

Court of Appeals of New Mexico.

Sept. 29, 2003.

**554**

Jeff Romero, Albuquerque, for Appellants.

Jay R. Hone, Stevan Douglas Looney, The Hone Law Firm, P.C., Albuquerque, for Appellees.

*OPINION*

FRY, J.

{1} This case requires us to clarify the circumstances under which a plaintiff is entitled to join a defendant's liability insurer as a party to a lawsuit. Plaintiffs Evangeline Trujillo Romero and Jeff Romero appeal the dismissal of Defendant Cigna Property and Casualty (Cigna) from their personal injury action against the Pueblo of Sandia and Sandia Casino (the Casino). Plaintiffs argue that under the three-part test reiterated in *Raskob v. Sanchez,* 1998–NMSC–045, ¶ 3, 126 N.M. 394, 970 P.2d 580, they are entitled to join Cigna, the liability insurer for the Casino. For the reasons that follow, we agree with Plaintiffs. Accordingly, we reverse the trial court's dismissal of Cigna and remand for further proceedings consistent with this opinion.

## BACKGROUND

{2} Plaintiff Evangeline Trujillo Romero alleges that she suffered personal injuries on the Casino premises as a result of a gap in a stairway hand rail. Plaintiff Jeff Romero, her husband, alleges a claim for loss of consortium. In their negligence action against the Casino, Plaintiffs named Cigna as a party to the lawsuit, stating that Cigna provides liability insurance for the Casino. Cigna filed a motion to dismiss arguing that Plaintiffs stated no cause of action against it as the insurer. The trial court granted the motion on the basis that Cigna was not properly joined under *Raskob,* which contains a three-part test carving out an exception to the general rule that a plaintiff has no cause of action against the insurer of a negligent defendant. *Id.* Plaintiffs appeal.

## DISCUSSION

{3} We agree with Plaintiffs that joinder under the *Raskob* factors extends beyond cases invoking the Mandatory Financial Responsibility Act (MFRA), *see* NMSA 1978, §§ 66–5–201 to –239 (1978, as amended through 2003), and that the *Raskob* analysis applies where the Indian Gaming Compact (Compact) is the source of the statutory provision mandating liability insurance. *See* NMSA 1978, §§ 11–13–1 to –2 (1997). Cigna advances three arguments against reversal. Assailing the procedural foundation for Plaintiffs' appeal, Cigna contends that this Court lacks jurisdiction because Plaintiffs did not file a notice of appeal as required by Rule 12–202 NMRA 2003. Cigna further argues that, in the event that this Court has jurisdiction, the *Raskob* analysis does not apply to this case. Finally, Cigna maintains that the trial court's dismissal was proper under Rule 1–012(B)(6) NMRA 2003, because even if the *Raskob* factors apply, Plaintiffs were required to allege the three factors in their complaint and they failed to do so. We address each argument in turn.

### A. Jurisdiction of this Court in the Absence of a Rule 12–202 Notice of Appeal

{4} Cigna argues that this Court lacks jurisdiction because Plaintiffs did not file a notice of appeal in the trial court within

thirty days of the order dismissing Cigna as a party. To address this contention, we briefly recount the relevant procedural history.

{5} At the hearing on Cigna's motion to dismiss, the trial court indicated that it would grant Cigna's motion and also invited Plaintiffs to file an interlocutory appeal from the order of dismissal. The subsequent written order, prepared by Cigna at the trial court's request, included the requisite language permitting an interlocutory appeal. *See* NMSA 1978, § 39–3–4(A) (1999). Plaintiffs responded to the order of dismissal by filing an application for interlocutory appeal with this Court. However, as Cigna points out and as we stated in our calendar assignment notice to the parties, the order of dismissal constituted a final, appealable order with respect to Cigna. *See* Rule 1–054(B)(2) NMRA 2003 ("When multiple parties are involved, judgment may be entered adjudicating all issues as to one or more, but fewer than all parties. Such judgment shall be a final one unless the court ... expressly provides otherwise."). Because the dismissal conferred an appeal as of right, Plaintiffs should have filed a notice of appeal with the trial court within thirty days of the entry of the order of dismissal. *See* Rule 12–201(A)(2) NMRA 2003; Rule 12–202(A).

{6} A timely notice of appeal is a "mandatory precondition[ ] to the exercise of jurisdiction." *Trujillo v. Serrano*, 117 N.M. 273, 277, 871 P.2d 369, 373 (1994) (emphasis omitted). Therefore, we do not ordinarily entertain an appeal in the absence of a timely notice. *See Govich v. N. Am. Sys., Inc.*, 112 N.M. 226, 230, 814 P.2d 94, 98 (1991). However, "unusual circumstances" create an exception that "warrant[s] permitting an untimely appeal." *Trujillo*, 117 N.M. at 278, 871 P.2d at 374. Judicial error is one such unusual circumstance. *Id.; see also Jaritas Live Stock Co. v. Spriggs*, 42 N.M. 14, 16, 74 P.2d 722, 723 (1937) (per curiam) (permitting appeal where the appellant promptly mailed the motion and prepared order to the trial court, but the judge filed the order one day after the expiration of the period).

{7} In this case, we believe that judicial miscommunication led Plaintiffs to believe they had perfected their appeal when they had not. At the calendaring stage of this appeal, the absence of a timely notice of appeal filed in the trial court should have triggered this Court's dismissal of the appeal. *See Govich*, 112 N.M. at 230, 814 P.2d at 98 (explaining that time and place of filing notice of appeal is mandatory precondition to appellate jurisdiction). Instead, this Court, within the time for filing a notice of appeal and well within the time that would be allowed with an extension, informed the litigants that it would consider Plaintiffs' application for interlocutory appeal to serve as a notice of appeal and docketing statement. Thus, we clearly expressed that we would entertain Plaintiffs' appeal. We will not now decline to hear the appeal because of a technical defect that we helped create. *See Trujillo*, 117 N.M. at 278, 871 P.2d at 374 ("To deny a party the constitutional right to an appeal because of a mistake on the part of the court runs against the most basic precepts of justice and fairness.").

## B. Joinder of Insurer Where Liability Insurance is Mandated Under the Compact

{8} In general, an injured party cannot join the insurer of a negligent defendant absent "a contractual provision or statute or ordinance" providing otherwise. *Raskob*, 1998–NMSC–045, ¶ 3, 126 N.M. 394, 970 P.2d 580. This legal principle results from the lack of privity between the injured party and the insurer of the allegedly negligent party. *Id.* An exception to this rule exists, and joinder of the defendant's insurer is permitted, where "1) the coverage was mandated by law, 2) it benefits the public, and 3) no language of the law expresses an intent to deny joinder." *Id.* Plaintiffs' appeal centers on their contention that this exception applies to their case and that they were therefore entitled to join Cigna. Cigna counters that the exception does not apply when the law mandating insurance is the Compact and that the trial court correctly dismissed Cigna from the lawsuit. Because the outcome of this dispute turns entirely on application of the law, we review the trial court's determination de novo. *See Sitterly v. Matthews*, 2000–

NMCA–037, ¶ 22, 129 N.M. 134, 2 P.3d 871 (discussing standard of review).

{9} Considering each of the three factors in turn, we first determine whether the liability insurance at issue is mandated by law. *See Martinez v. Reid,* 2002–NMSC–015, ¶ 8, 132 N.M. 237, 46 P.3d 1237. Section 8 of the Compact contains the following language:

> B. Insurance Coverage for Claims Required. The Gaming Enterprise shall maintain in effect policies of liability insurance insuring the Tribe, its agents and employees against claims, demands or liability for bodily injury and property damages by a visitor arising from an occurrence described in Subsection A of this section. The policies shall provide bodily injury and property damage coverage in an amount of a[t] least one million dollars ($1,000,000) per person and ten million dollars ($10,000,000) per occurrence. The Tribe shall provide the State Gaming Representative annually a certificate of insurance showing that the Tribe, its agents and employees are insured to the required extent and in the circumstances described in this section.

Section 11–13–1. This language unequivocally requires insurance coverage, thus satisfying the first factor. *See State v. Richardson,* 113 N.M. 740, 741, 832 P.2d 801, 802 (Ct.App. 1992) (stating that statutory construction is unnecessary where "the language is clear and the meaning of the words used is unambiguous").

{10} The second factor requires us to decide whether the Compact benefits the public. *See Martinez,* 2002–NMSC–015, ¶ 8, 132 N.M. 237, 46 P.3d 1237. The title of Section 8, "Protection of Visitors," reflects that one of the Compact's purposes is to protect the general public. Moreover, Section 8 further provides as follows:

> A. Liability to Visitors. The safety and protection of visitors to a Gaming Facility and uniformity and application of laws and jurisdiction of claims is directly related to and necessary for the regulation of Tribal gaming activities in this state. To that end, the general civil laws of New Mexico and concurrent civil jurisdiction in the State courts and the Tribal courts shall apply to a visitor's claim of liability for bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise and:

> 1. occurring at a Gaming Facility, other premises, structures, on grounds or involving vehicles and mobile equipment used by a Gaming Enterprise;

> 2. arising out of a condition at the Gaming Facility or on premises or roads and passageways immediately adjoining it[.]

Section 11–13–1. In light of this language, which explicitly serves the goal of protecting visitors, we conclude that the Compact benefits the public. Accordingly, the Compact satisfies the second factor.

{11} Finally, we consider the third factor: whether the Compact intends to negate joinder. *See Martinez,* 2002–NMSC–015, ¶ 8, 132 N.M. 237, 46 P.3d 1237. Such intent exists only where it is expressed in the language of the law. *Id.* ¶ 11. Cigna points to no express language negating joinder, instead arguing that the Compact impliedly negates joinder. In the absence of express negation of joinder, however, the third factor is met. *See id.*

{12} We therefore conclude that the relevant language in the Compact satisfies all three factors of the test for joinder of an insurer. We reject Cigna's suggestion that the test is limited to statutes with structure and language nearly identical to the MFRA. To the contrary, the law reflects that the three-factor test applies in a variety of contexts. *See Anchor Equities, Ltd. v. Pac. Coast Am.,* 105 N.M. 751, 753, 737 P.2d 532, 534 (1987) (applying test with respect to issuer of fidelity bonds required under the Escrow Company Act); *England v. N.M. State Highway Comm'n,* 91 N.M. 406, 408–09, 575 P.2d 96, 98–99 (1978) (applying test to previous version of Tort Claims Act); *Breeden v. Wilson,* 58 N.M. 517, 523–24, 273 P.2d 376, 379–80 (1954) (applying test to city ordinance requiring taxi cab operators to obtain surety bond or policy of insurance). We now hold that it applies when the relevant statute is the Compact.

{13} We reach this conclusion having considered the parties' responses to our request that they brief the specific question of whether the Compact operates in the same manner as the MFRA with respect to the factors in *Raskob*. Cigna argues that we should not treat the Compact like the MFRA because the statutes have different purposes. In addition, Cigna asserts that the *Raskob* factors are not met because the mandatory insurance provisions of the Compact are merely incidental and because the Compact implies negation of joinder. As discussed below, we find these arguments unpersuasive.

{14} Before addressing Cigna's attempts to distinguish the Compact from the MFRA, however, we observe that neither party attributes any significance to the fact that the Compact is a negotiated contract ratified by the legislature. *See Gallegos v. Pueblo of Tesuque*, 2002–NMSC–012, ¶ 30, 132 N.M. 207, 46 P.3d 668 (noting that the Compact is a contract between the State and the defendant tribe and codified by the legislature). The MFRA, in contrast, is a statute passed by the standard legislative process. This distinction would inform our analysis if we were interpreting the meaning of the Compact. *Id.* ¶¶ 30–33. In this case, however, our primary task is not to give meaning to the Compact itself, but instead to consider the Compact's legal effect within the framework of the *Raskob* factors. We have no reason to believe, nor do the parties suggest, that the method by which the Compact became law has any bearing on its function within our joinder analysis. Thus, we assume without deciding that the contractual nature of the Compact has no significance to this case.

{15} We now turn to Cigna's attempts to distinguish the Compact from the MFRA. Cigna emphasizes that the exclusive purpose of the MFRA is to provide a means to recover damages arising from the use of motor vehicles. Section 66–5–201.1. Cigna contrasts this with purposes of the Compact, which include implementing the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701 to 2721, providing revenue to tribal governments, and permitting the State to ensure that casino gaming is conducted fairly and honestly. Section 11–13–1, Section 1(G). That the Compact has multiple purposes reflects a much broader scope than the MFRA, but we do not agree with Cigna's suggestion that because the Compact has wide-ranging goals, any purposes outside of the "Purpose and Objectives" section of the Compact are rendered incidental. This view disregards the entire section of the Compact devoted to "Protection of Visitors." Section 11–13–1, Section 8. Moreover, the section on protection of visitors contains language explicitly linking it to the Compact's larger goal of permitting and regulating Indian gaming. *See id.* Section 8(A) ("The safety and protection of visitors to a Gaming Facility . . . is directly related to and necessary for the regulation of Tribal gaming activities in this state."). Accordingly, we reject Cigna's suggestion that the *Raskob* analysis does not apply just because the Compact's primary focus is not liability insurance.

{16} Cigna further tries to distinguish the Compact from the MFRA by focusing on language in the version of the MFRA analyzed in *Raskob*. Specifically, Cigna zeroes in on the now repealed "absolute liability" provision, which conferred liability on insurers at the moment of injury or damage under a motor vehicle policy regardless of whether the policy expressly so provided. *Raskob*, 1998–NMSC–045, ¶ 6, 126 N.M. 394, 970 P.2d 580 (citing NMSA 1978, § 66–5–221(E)(1) (1983) (repealed effective July 1, 1998)). According to Cigna, the absence of similar language in the Compact signals that it was not designed to permit joinder. We agree with Cigna that the repealed MFRA provision contributed to the conclusion that the MFRA "manifests an intent that the liability carrier be joined as a defendant." *Id.* Subsequently, however, *Martinez* clarified that even without the absolute liability provision, the MFRA satisfies the third factor required for joinder simply because it contains no express language negating joinder. 2002–NMSC–015, ¶ 11, 132 N.M. 237, 46 P.3d 1237. In short, repeal of the absolute liability provision did not change the outcome of the *Raskob* analysis. Consequently, we are unpersuaded by Cigna's attempt to distinguish the

Compact based on the absence of a similar provision in the Compact.

### C. Whether Plaintiffs Must Allege the Three Factors for Joinder in Their Complaint

{17} Cigna argues for the first time on appeal that Plaintiffs were required to plead the *Raskob* factors in order to survive Cigna's motion to dismiss for failure to state a claim. *See* Rule 1–012(B)(6). Cigna did not make this argument in its motion to dismiss or at the hearing on its motion. Because Cigna did not preserve this issue below, we do not address it. We will not affirm on grounds not presented to the trial court when to do so would be unfair to the appellant. *Pinnell v. Bd. of County Comm'rs,* 1999–NMCA–074, ¶ 14, 127 N.M. 452, 982 P.2d 503. In this case, Cigna did not answer the complaint, instead filing a motion to dismiss. Under these circumstances, Plaintiffs could have amended their complaint to plead the allegations Cigna contends should have been pleaded. *See* Rule 1–015(A) NMRA 2003. Therefore, it would be unfair to Plaintiffs to rely on this ground for affirmance.

### D. Whether Error was Harmless

{18} Cigna argues that even if the trial court erred in refusing to permit joinder, such error was harmless. We disagree. *Martinez* upheld the *Raskob* rule permitting joinder of an insurer. *Martinez,* 2002–NMSC–015, ¶ 11, 132 N.M. 237, 46 P.3d 1237. Reading *Raskob* and *Martinez* together reflects that the Supreme Court did not contemplate the application of harmless error analysis in this context.

### CONCLUSION

{19} For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

{20} IT IS SO ORDERED.

PICKARD and SUTIN, JJ., concur.