2003-NMCA-061

66 P.3d 980

**Jane HOVET, Plaintiff–Appellant,**

v.

**Steven LUJAN, Arthur Lujan, Defendants,**

and

**Allstate Insurance Company, Defendants–Appellees.**

No. 22,276.

Court of Appeals of New Mexico.

Feb. 19, 2003.

Certiorari Granted, No. 27,969, April 7, 2003.

Thomas L. Grisham, Grisham & Lawless, P.A., Albuquerque, NM, for Appellant.

**612**

David W. Frizzell, Simone, Roberts & Weiss, P.A., Albuquerque, NM, for Appellees.

David J. Berardinelli, Berardinelli & Associates, Santa Fe, NM, William H. Carpenter, Carpenter & Chavez, Albuquerque, NM, for Amicus Curiae New Mexico Trial Lawyers Association.

Ann Maloney Conway, Deron B. Knoner, Huffaker & Conway, P.C., Albuquerque, NM, for Amicus Curiae New Mexico Defense Lawyers' Association.

## OPINION

ALARID, Judge.

{1} This case requires us to decide whether the public policy of New Mexico supports a direct private cause of action in favor of third-party claimants against automotive liability insurers who refuse to make good faith efforts to settle claims against their insureds. We hold that such a claim exists under the unfair claims practices provisions of the Insurance Code.

### PROCEDURAL HISTORY

{2} On February 20, 1997, Plaintiff–Appellant, Jane Hovet, filed a complaint against Steven and Arthur Lujan (Defendants) alleging that she had been injured as the result of being "struck from behind at high speed by [a] vehicle owned by Defendant Arthur Lujan and being negligently driven by Defendant Steven Lujan for a family purpose." Plaintiff also alleged that

[a]s a direct and proximate result of the negligent operation of the vehicle by Defendant Steven Lujan, Plaintiff Hovet was severely injured and incurred severe damages to her vehicle and loss of personal property destroyed in the accident; incurred medical, hospital and other doctor bills; will incur future medical bills, including those for an eventual surgery at some future time; suffered loss of enjoyment of her normal daily activities; is unable to perform her ordinary household services; and suffered lost wages and lost earning capacity. Plaintiff Hovet also suffered great pain of body and mind, mental anguish and distress, permanent disability/impairment, and will continue to suffer these into the future.

{3} In July 1997, Plaintiff moved for summary judgment on the issue of Defendants' liability. Plaintiff attached a portion of Steven Lujan's deposition where he describes how he had driven his car into the rear of Plaintiff's car. At the September 22, 1997 hearing on Plaintiff's motion, Defendants admitted liability.

{4} On March 22, 1999, the trial court granted Plaintiff leave to file an amended complaint joining Defendants' liability insurer, Allstate Insurance Company (Allstate). Plaintiff's amended complaint repeated her allegations against Defendants, and in addition, alleged that at the time of the accident Defendants were insured by Allstate; that pursuant to the New Mexico Mandatory Financial Responsibility Act, Defendants' automobile liability insurance was for the benefit of the general public, including victims of automobile accidents; that Allstate owed a duty of good faith and fair dealing to Plaintiff as a third-party beneficiary of Defendants' policy; that Allstate had breached its duty of good faith by refusing to "mediate, resolve and settle" her action against Defendants; and, that Allstate's actions were in violation of NMSA 1978, § 59A–16–20.

{5} Allstate filed a motion to dismiss the complaint, or, in the alternative, to bifurcate the claims against Allstate and to stay proceedings on the bad faith issues pending resolution of Plaintiff's claims against Defendants. The trial court denied the motion to dismiss, but granted Allstate's request for bifurcation and a stay of litigation of the claims against Allstate. The case proceeded to trial on the underlying tort case in July 2000. The jury was instructed that "defendant has admitted liability for any damage which may have proximately resulted from the occurrence. You need only decide what damages to plaintiff resulted from this occurrence and what damages plaintiff should recover for these injuries." The jury returned a verdict in favor of Plaintiff in the amount of $62,050.00. The trial court entered a judgment on the verdict for "$62,050.00, plus the costs of this action." Plaintiff filed a cost bill documenting $3,459.45 in costs. There is no

dispute that Allstate promptly paid the judgment entered against its insureds. On October 27, 2000, Plaintiff filed a satisfaction of judgment in which she acknowledged receipt of $67,932.37 in full satisfaction of her judgment against Defendants.

{6} In December 2000, Allstate filed a renewed motion to dismiss Plaintiff's claims against Allstate. Allstate argued that "the duty of good faith and fair dealing only applies between insurer and insured, not insurer and claimant" and that Section 59A–16–20 "does not provide claimants with a right of action against [an] insurance company's failure to 'mediate, resolve or settle' a third party claim." Allstate also argued that the Supreme Court's decision in *Raskob v. Sanchez*, 1998–NMSC–045, 126 N.M. 394, 970 P.2d 580, merely recognized a procedural right to join an insurer, not a new substantive cause of action. On March 19, 2001, the trial court entered an order in which the court determined that

1. A third-party injured by an insured person, insured pursuant to the New Mexico Financial Responsibility Act, is not a third-party beneficiary to that insurance policy.
2. New Mexico does not recognize a common law cause of action by a third-party for bad faith.
3. New Mexico's Unfair Claims Practices Act does not recognize a cause of action by a third-party for bad faith, or for failure to mediate, resolve, and settle.

The trial court ordered that Plaintiff's complaint against Allstate be dismissed with prejudice.

{7} Plaintiff filed a timely notice of appeal. Following briefing by the parties, we certified this case to the Supreme Court pursuant to NMSA 1978, § 34–5–14(C)(2)(1972) as involving "an issue of substantial public interest that should be determined by the supreme court." Our Supreme Court declined to exercise appellate jurisdiction. We then requested amicus briefs from the New Mexi-

co Trial Lawyers Association and the New Mexico Defense Lawyers' Association.[1]

*DISCUSSION*

**Standard of Review**

{8} Because this appeal arises from an order dismissing a complaint for failure to state a claim upon which relief may be granted, we apply the following standards:

A motion to dismiss pursuant to [Rule] 1–012(B)(6) [NMRA 2003] tests the legal sufficiency of the complaint. In reviewing an order granting a motion to dismiss, we accept as true all facts properly pleaded. A complaint is subject to dismissal under [Rule] 1–012(B)(6) only if under no state of facts provable thereunder would a plaintiff be entitled to relief.... Under this standard of review only the law applicable to such claim is tested, not the facts which support it.

*Rummel v. Edgemont Realty Partners, Ltd.,* 116 N.M. 23, 25, 859 P.2d 491, 493 (Ct.App. 1993) (citations omitted).

{9} As we understand Plaintiff's theory of her case, Plaintiff is prepared to prove that she was severely injured in the accident with Defendants; that Plaintiff incurred in excess of $11,000.00 in medical expenses as a result of the accident; and, that even after Defendants admitted liability, Allstate's highest settlement offer was approximately $7,200–substantially less than Plaintiff's medical expenses, and a small fraction of the $62,050.00 ultimately awarded by the jury.

{10} Amicus New Mexico Trial Lawyers Association (NMTLA) asserts that Allstate's treatment of Plaintiff is merely a single instance of a nationwide practice. According to NMTLA, Allstate has adopted a "Settle for 'X' or Litigate" policy applicable to cases where the liability of Allstate's insured is reasonably clear at the outset. According to NMTLA, Allstate makes a "one time 'take-it-or-leave-it' " offer generated by a computer program that evaluates claims "without any real regard for the individual characteristics of any particular claim or claimant." According to NMTLA, the settlement offers gener-

---

1. We take this opportunity to thank Amici for their public service in filing briefs that have been of considerable help to this Court.

ated by Allstate's computer program are "approximately 25–40% of the historical values" for similar claims, and frequently do not even equal the amount of the claimant's medical bills.

{11} For purposes of our analysis, we will accept the assertions of Plaintiff and NMTLA as conceivable states of facts provable under the allegations of Plaintiff's complaint.

## The NMMFRA Does Not Impose a Duty to Settle

{12} In New Mexico, the right to recover damages for tortious injury to one's property or person generally is played out in a fault-based system of liability. *See generally Trujillo v. City of Albuquerque*, 110 N.M. 621, 624–25, 798 P.2d 571, 574–75 (1990). In this common-law system of liability, the injured party and the alleged tortfeasor are adversaries, who have no duty to look after the opposing party's interests. *See Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 750 P.2d 118 (1988) (discussing adversarial nature of litigation; declining to impose on attorney duty of care toward opposing party). While public policy encourages settlements, *see, e.g., Environmental Control, Inc. v. City of Santa Fe*, 2002–NMCA–003, ¶ 19, 131 N.M. 450, 38 P.3d 891, we are unaware of any common-law authority imposing a duty to settle on parties to a civil dispute arising out of an automobile accident.

{13} Under the common law, the same principles apply when the tortfeasor is represented by an insurer:

> The insurer has a fiduciary duty to the insured but an adversary relationship with the victim. The effect of the policy is to align the insurer's interests with those of the insured. . . . [T]he insurer stands in the shoes of the insured in dealing with the victim. Because the insured has a right to require liability to be proven as a predicate for payment of the loss, the victim cannot compel the insured to negotiate and settle the loss beforehand. No basis exists for giving the victim a greater right when negotiating with the tortfeasor's insurer than exists when the victim negotiates with the tortfeasor directly.

*Long v. McAllister*, 319 N.W.2d 256, 262 (Iowa 1982) (declining to recognize cause of action in favor of injured third party against tortfeasor's insurer); *accord Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 263 (1981) (observing that "as the tort claimant has no legal right to require the tortfeasor to negotiate or settle, it likewise lacks [the] right to require such action by his representative").

{14} Plaintiff has not included a copy of Allstate's policy in the record and her briefs do not refer to specific language in Allstate's policy. In the absence of any discussion of the specific language in Allstate's policy, we must assume that Plaintiff is relying on public policy, as manifested in the New Mexico Mandatory Financial Responsibility Act, NMSA 1978, §§ 66–5–201 to –239 (1978, as amended through 1998) (NMMFRA), to impose on Allstate a duty to settle with Plaintiff as an injured third party.

{15} In our view, the NMMFRA addresses the narrow problem of the judgment-proof tortfeasor who lacks "the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle." Section 66–5–201.1 (setting out legislative purpose in enacting NMMFRA). While the NMMFRA allows the parties involved in, or affected by, an accident to enter into a settlement agreement, Section 66–5–210(A), the NMMFRA does not require the parties to negotiate. We find no suggestion in the NMMFRA that the Legislature intended the NMMFRA to alter the adversarial, fault-based system of recovery. *Cf. Kranzush*, 307 N.W.2d at 261 (noting that automobile accident victim "is not the object of a sweeping statutory scheme designed to promote the compensation of injuries in a routine, largely nonadversarial manner").

{16} We recognize that a liability insurer is subject to a duty of good faith in determining whether to settle a claim against the insured. However, the duty to settle is related to the duty to defend, and is imposed to protect the insured, not the injured third party. *See Dairyland Ins. Co. v. Herman*, 1998–NMSC–005, ¶¶ 12–15, 124 N.M. 624, 954 P.2d 56 (discussing rationale for impos-

ing duty to settle); *accord O.K. Lumber Co. v. Providence Wash. Ins. Co.*, 759 P.2d 523, 526 (Alaska 1988) (holding that "[a]ny obligation to deal with settlement offers in good faith runs only to the insured"; observing that "insurer could hardly have a fiduciary relationship both with the insured and a claimant").

{17} Plaintiff argues that a line of Supreme Court authority culminating in Raskob v. Sanchez, 1998–NMSC–045, ¶ 6, 126 N.M. 394, 970 P.2d 580, requires us to recognize a third-party beneficiary relationship between Allstate and Plaintiff. In Raskob, the Supreme Court held that the NMMFRA manifested the Legislature's intention to allow joinder of a tortfeasor's automobile liability insurer to an insured party's lawsuit against the insured. However, in Raskob, the Supreme Court carefully distinguished an insurer's "liability to pay, which arises after judgment against its insured," from the insurer's liability to suit. Id. (emphasis added) (citing Lopez v. Townsend, 37 N.M. 574, 583, 25 P.2d 809, 813–14 (1933) (Watson, C.J.) (on rehearing)). Raskob does not state a test for determining whether an injured third party is a third-party beneficiary of mandatory automobile liability coverage. Rather, the Lopez–Raskob line of authority states a test for determining when public policy, as manifested in a statute or ordinance requiring liability insurance for the benefit of the public, overrides a "no action," or similar provision, in a liability policy, thereby allowing the insured's liability to the motorist and the insurer's liability to pay a judgment entered against its insured to be determined in a single action. Raskob serves a function analogous to that of Rule 1–014(A) NMRA 2003, which authorizes a defendant to join as a third-party defendant a person "who is or may be liable to him for all or part of the plaintiff's claim against him." Cf. 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1449 (2002) (observing that joinder of insurer pursuant to Fed. R. Civ. Proc. 14(a) "only accelerates the determination of the insurer's liability; it does not result in a judgment against the insurer except when based on a prior judgment against the insured"). Raskob should not be understood as otherwise altering the common-law substantive relationships among automobile liability insurers, insured-motorists and injured third-party claimants.

{18} We conclude that the NMMFRA does not alter the common-law adversary relationships in which the insurer and insured are aligned against the injured third party. We hold that the NMMFRA does not impose on automobile liability insurers a duty to consider the interests of the injured third party in making or responding to settlement offers.

{19} Our holding should not be understood to foreclose application of the duty of good faith and fair dealing in favor of the injured third party in other contexts, such as an insurer's bad faith failure to pay a final judgment against an insured or bad faith breach of a settlement agreement.

**Plaintiff Has a Claim Under the Insurance Code**

{20} In 1984, the Legislature engaged in a comprehensive revision and codification of insurance law resulting in the current Insurance Code. 1984 N.M. Laws, ch. 127. The new Insurance Code included a section defining and prohibiting unfair and deceptive claims practices. NMSA 1978, § 59A–16–20 (1984, as amended through 1997). The following definitions of unfair and deceptive practices are of particular relevance to Plaintiff's claims against Allstate:

Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:

. . . .

E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

. . . .

G. compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for

amounts reasonably similar to amounts ultimately recovered[.]

Section 59A–16–20. Further, for the first time, the Legislature expressly provided a private right of action against insurers who engage in unfair and deceptive practices: "Any person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court." NMSA 1978, § 59A–16–30 (1984, as amended through 1990).

{21} The Legislature also provided the following administrative remedy:

The superintendent shall suspend or revoke an insurer's certificate of authority on any of the following grounds, if found after a hearing thereon that the insurer:

. . . .

(2) with such frequency as to indicate its general business practice in this state:

(a) has without just cause failed to pay, or delayed payment of, claims arising under its policies, whether the claim is in favor of an insured or in favor of a third person with respect to the liability of an insured to such third person; or

(b) without just cause compels insureds or claimants to accept less than [the] amount due them or to employ [an] attorney or to bring suit against the insurer or such an insured to secure full payment or settlement of a claim[.]

NMSA 1978, § 59A–5–26(C)(2) (1984, as amended through 1997).

{22} Allstate, joined by Amicus New Mexico Defense Lawyers' Association (NMDLA), makes a compelling argument that the Legislature consciously distinguished between "claimants" and "insureds" in defining the various activities that constitute unfair and deceptive claims practices, and that the omission of any reference to claimants in Subsections 59A–16–20(E) and (G) was intended by the Legislature to limit the benefits of these subsections to persons meeting the traditional definition of insureds. As Allstate and NMDLA point out, two definitions of unfair claims practices expressly refer to activities respecting claimants: Subsections 59A–16–20(K) (making known to insureds or claimants a practice of appealing arbitration awards favorable to the insured or claimant) and 59A–16–20(L) (requiring an insured, claimant or physician to submit duplicative proof of loss forms).

{23} The inference that in enacting the Insurance Code the Legislature consciously and carefully distinguished between insureds and other persons who might be aggrieved by the activities of insurers is reinforced by consideration of Subsection 59A–5–26(C)(2). In Subparagraph (a), the Legislature clearly distinguished between claims "in favor of an insured" and claims "in favor of a third person with respect to the liability of an insured to such third person." Further, in Subparagraph (b), the Legislature expressly recognized that there may be occasions in which an insurer's claims practices force a third-party claimant to bring suit against "an insured" to secure full settlement of a claim. NMDLA argues that the Legislature, in enacting the Insurance Code, was fully aware of the problem of the use of abusive claims settlement practices against third-party claimants, but that the Legislature's answer to this public policy question was to authorize the Superintendent to "strip an abusive insurer of the right to do business in New Mexico" rather than to create a private cause of action in favor of third-party claimants.

{24} Plaintiff, joined by Amicus NMTLA, argues that we should apply the reasoning of *Russell v. Protective Ins. Co.*, 107 N.M. 9, 751 P.2d 693 (1988). In *Russell*, our Supreme Court held that the fact that certain definitions of unfair claims settlement practices refer to both insureds and claimants indicated "that the legislature did not intend to limit Article Sixteen simply to the traditional notion of 'insured.'" *Id.* at 13, 751 P.2d at 697 (citing former Subsection 59A–16–20(J) [currently codified as Subsection 59A–16–20(K)]). Our Supreme Court further held that an employee was an intended beneficiary of the contract between his employer and the employer's workers' compensation insurer; and, as such, could pursue a claim against the insurer pursuant to Subsection 59A–16–20(E) for alleged bad faith in

denying the employee's claim for workers' compensation benefits.

{25} We realize, of course, that *Russell* was decided in the context of the Workers' Compensation Act. However, the absence of any discussion of the unique character of the workers' compensation system, coupled with the emphasis given Article Sixteen of the Insurance Code, indicates to us that our Supreme Court's third-party beneficiary analysis was not dependent on the plaintiff's status as a workers' compensation claimant. *See Russell*, 107 N.M. at 13, 751 P.2d at 697 (observing that in enacting Article Sixteen Legislature "prescribed" worker's status as intended beneficiary of employer's contract).

{26} Recently, in another automobile insurance case, our Supreme Court emphasized the constraints imposed by stare decisis: "If the mere citation of new authority or even reliance on a different justification than was presented in a prior case were sufficient to strip a case of precedential value, the doctrine of stare decisis would virtually disappear." *Padilla v. State Farm Auto. Ins. Co.*, No. 27,258 slip op. at ¶ 4. (N.M. Dec. 20, 2002). We conclude that consistent with our Supreme Court's recent statements in *Padilla* regarding stare decisis, *Russell* is not limited to the specific context of workers' compensation insurance and that its interpretation of Section 59A–16–20 is equally applicable in the context of automobile liability insurance. Applying *Russell*, we hold that Plaintiff's complaint states a claim under Section 59A–16–20.

## CONCLUSION

{27} We affirm the trial court's rulings that the NMMFRA does not create a common-law third-party beneficiary relationship between an injured person and the tortfeasor's liability insurer, and that New Mexico does not recognize a common-law cause of action by an injured third party against the tortfeasor's liability insurer for bad faith refusal to settle. We reverse the trial court's ruling that Plaintiff failed to state a claim under the Insurance Code. This case is remanded with instructions to reinstate Count V of Plaintiff's First Amended Complaint.

{28} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.