2004-NMSC-010

89 P.3d 69

Jane HOVET, Plaintiff–Respondent,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Petitioner.

Lesvia Maritza Reynoso, individually and as mother, natural guardian, and next friend of Mynor C. and Mynor C., her minor child, Plaintiffs–Respondents,

v.

Allstate Insurance Company, Defendant–Petitioner.

Nos. 27,969, 28,009.

Supreme Court of New Mexico.

April 8, 2004.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Jennifer Noya, Lisa Mann, Simone, Roberts & Weiss, P.A., David W. Frizzell, Albuquerque, NM, Steptoe & Johnson, L.L.P., Bennett Evan Cooper, Phoenix, AZ, for Petitioner.

Grisham & Lawless, P.A., Thomas L. Grisham, Albuquerque, NM, for Respondent Hovet.

Peter V. Culbert, Santa Fe, NM, for Respondent Reynoso.

Montgomery & Andrews, P.A., Gary Kilpatrick, Jennifer L. Weed, Santa Fe, NM, for Amicus Curiae Association of Commerce and Industry of New Mexico and the American Legislative Exchange Council.

Berardinelli & Associates, David Berardinelli, Santa Fe, NM, for Amicus Curiae New Mexico Trial Lawyers Association.

Huffaker & Conway, P.C., Ann Maloney Conway, Deron B. Knoner, Miller, Stratvert, Alice Tomlinson Lorenz, Albuquerque, NM, for Amicus Curiae American Insurance Association, et al.

Eaton & Krehbiel, P.C., P. Scott Eaton, Keleher & McLeod, P.A., Kathleen M. Wilson, Albuquerque, NM, for Amicus Curiae New Mexico Defense Lawyers Association.

## OPINION

BOSSON, Justice.

{1} Section 59A–16–20 of the Trade Practices and Fraud Article (Article 16) of the Insurance Code prohibits insurance companies from engaging in certain "unfair and deceptive practices," which include "not attempting in good faith to effectuate prompt,

fair and equitable settlements of an insured's claims in which liability has become reasonably clear." NMSA 1978, § 59A–16–20 and – 20(E) (1997) (hereafter "unfair claims practices section"). Further, Section 59A–16–30 of the same article grants a right of action to any person covered by Article 16 "who has suffered damages as a result of a violation of that article by an insurer or agent." NMSA 1978, § 59A–16–30 (1990). Given these statutory provisions, we examine whether Article 16 confers upon a victim of an automobile accident a direct right of action against the insured's automobile liability insurance company, when the liability insurer fails to make good-faith efforts, as defined by Section 59A–16–20(E), to settle a liability claim. Subject to certain stipulations set forth in this opinion, we hold that the unfair claims practices section of the Insurance Code creates such a right of action. In so holding, we affirm the Court of Appeals and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND

### Hovet's Claims

{2} In March 1995, Jane Hovet was injured when a vehicle driven by Steven Lujan and owned by Arthur Lujan struck her vehicle from behind at high speed. Hovet filed a complaint for negligence against the Lujans in February 1997, and later amended it to join the Lujans' insurer, Allstate Insurance Co. (Allstate), as a defendant. At a hearing on summary judgment, the Lujans admitted liability. Hovet later added a claim against Allstate for "failing to mediate, resolve and settle" her negligence action against the Lujans, as required by the unfair claims practices section of the Insurance Code. *See* § 59A–16–20. Although Hovet's medical expenses alone exceeded $11,000, and the Lujans had conceded liability for all of Hovet's damages proximately caused by the collision, Allstate's highest settlement offer before trial was only $7,200.

{3} The district court bifurcated the claims against Allstate from the underlying negligence action against the Lujans, which was tried in July 2000. The jury returned a verdict in Hovet's favor for $62,050, which Allstate paid together with Hovet's costs. In

March 2001, the district court dismissed Hovet's claims against Allstate with prejudice. The court determined *inter alia* that, even if Allstate's conduct violated the unfair claims practices section of the Insurance Code by unreasonably failing to mediate, resolve and settle Hovet's claims, a third party to an insurance contract has no claim for relief under the statute.

{4} After Hovet appealed the dismissal of her claims against Allstate, our Court of Appeals affirmed in part and reversed in part. *Hovet v. Lujan,* 2003–NMCA–061, 133 N.M. 611, 66 P.3d 980. In reversing the district court, the Court of Appeals held that Hovet, as a third-party claimant, stated a claim for relief under the Insurance Code for Allstate's alleged failure to make good-faith efforts to settle. We granted Allstate's petition for certiorari to review that portion of the opinion.

### Reynoso's Claims

{5} Maritza Reynoso and her son, Mynor C., were in an automobile accident with Laura Waller in December 1998. Waller was insured by Allstate, which paid Reynoso's property damage and offered to settle her bodily injury claims for $3,000. The combined medical expenses of the plaintiffs were $5,410. Although Reynoso made several settlement proposals of her own, Allstate never increased its offer. Reynoso then filed a complaint against Waller and Allstate in June 2000, alleging that Waller had been negligent and that Allstate had violated the Insurance Code by refusing to settle or adjust Reynoso's claims.

{6} In October 2000, the district court bifurcated the negligence claim against Waller from the statutory claims against Allstate. Before trial, Waller admitted liability, and conceded that Reynoso was not comparatively at fault, but denied that she was the proximate cause of all of the injuries. Ten days before trial on the negligence claim, Allstate increased its settlement offer to $5,250 for Reynoso and $2,000 for her son. At trial, the jury returned a verdict against Waller in the amounts of $7,180 for Reynoso and $1,520 for her son. Allstate paid the

**400**

judgment, as well as costs and pre-judgment interest.

{7} In March 2002, the district court dismissed the claims against Allstate under the unfair claims practices section of the Insurance Code. *See* § 59A–16–20. On appeal, the Court of Appeals filed a memorandum opinion reversing the district court, relying on its opinion in *Hovet,* 2003–NMCA–061, 133 N.M. 611, 66 P.3d 980.

{8} Following *Hovet,* Allstate petitioned for a writ of certiorari. We granted certiorari and consolidated both petitions to decide a question common to both: whether third-party claimants of automobile liability insurance policies have a statutory cause of action under the Insurance Code when the liability insurer fails to make good-faith efforts to settle the underlying claim.

**DISCUSSION**

**The Unfair Claims Practices Section of the Insurance Code**

■ {9} The issue before this Court is the interpretation of the unfair claims practices section, and the private right of action afforded in the Insurance Code, in relation to claims for automobile liability insurance. *See* §§ 59A–16–20 and –30. Relying upon *Russell v. Protective Insurance Co.,* 107 N.M. 9, 751 P.2d 693 (1988), the Court of Appeals upheld a third-party's claim under the unfair claims practices section. *Hovet,* 2003–NMCA–061, ¶ 26, 133 N.M. 611, 66 P.3d 980. We are asked to disregard the prior holding of this Court in *Russell,* and conclude that the Insurance Code does not confer upon third-party claimants a direct cause of action for unfair claims practices. In the specific context presented to us, which is statutorily mandated automobile liability insurance, we decline to do so. For the reasons stated below, we believe the Legislature intended to provide a statutory cause of action under the Insurance Code to third-party claimants just like Hovet and Reynoso. We also conclude that precedent and public policy fully support such an action.

■ {10} Statutory interpretation is a question of law, which we review de novo. *See Bd. of Comm'rs of Rio Arriba County v. Greacen,* 2000–NMSC–016, ¶ 4, 129 N.M.

177, 3 P.3d 672. The guiding principle of statutory construction is that a statute should be interpreted in a manner consistent with legislative intent. *State ex rel. Newsome v. Alarid,* 90 N.M. 790, 794, 568 P.2d 1236, 1240 (1977). To determine legislative intent, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied. *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994); *Miller v. N.M. Dep't of Transp.,* 106 N.M. 253, 254, 741 P.2d 1374, 1375 (1987).

{11} The unfair claims practices section, Section 59A–16–20, is part of the Trade Practices and Fraud Article (Article 16) of the Insurance Code. NMSA 1978, §§ 59A–16–1 to –30 (as amended through 2003). The purpose of Article 16 is "to regulate trade practices in the insurance business." Section 59A–16–2 (1984). The unfair claims practices section was patterned after the National Association of Insurance Commissioners' Model Act. In adopting a version of the Model Act in 1984, however, the New Mexico Legislature made significant changes, such as adding a private right of action against insurers that commit the unfair claims practices defined in Article 16. *See* § 59A–16–30; *cf. Patterson v. Globe Am. Cas. Co.,* 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App.1984) (holding under a prior insurance code that did not contain a private cause of action that a third party does not have a claim against an insurer for unfair practices). Thus, New Mexico now stands in a position unique to the overwhelming majority of other states, in which courts have struggled over whether they should imply a private right of action from legislative silence. *See, e.g., Royal Globe Ins. Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329, 332 (1979) (holding that violations of the state's unfair settlement practices statute support private actions for insured persons or injured third parties), *overruled by Moradi–Shalal v. Fireman's Fund Ins. Cos.,* 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58, 68 (1988) (holding that no private cause of action exists for insureds or third-party claimants because California's version of the Model Act did not expressly create one).

{12} Given the lack of statutory authority in most other jurisdictions, it is not surprising that most judicial opinions deny private parties standing to sue for violations of unfair claims practices statutes. *See, e.g., Herrig v. Herrig,* 844 P.2d 487, 493–94 (Wyo.1992) (refusing to recognize a private right of action to enforce the insurance code absent an express provision); *Scroggins v. Allstate Ins. Co.,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718, 721 (1979) (holding that absent statutory or contractual language sanctioning a direct action, an injured third party has no direct action against an insurer for breach of duty to exercise good faith or due care). *See generally* Stephen S. Ashley, *Bad Faith Actions: Liability & Damages* § 9:03, at 9–10 (2d. ed.1997). Of those jurisdictions that allow a statutory cause of action, only a few extend that right to third-party claimants. *See, e.g., Klaudt v. State Farm Mut. Auto. Ins. Co.,* 202 Mont. 247, 658 P.2d 1065, 1067 (1983) (holding that a third-party claimant has a cause of action against a defendant's insurer for failure to settle), *superseded by statute as stated in O'Fallon v. Farmers Ins. Exch.,* 260 Mont. 233, 859 P.2d 1008, 1014–15 (1993); *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252, 256–58 (1981) (holding that a third party may maintain a direct cause of action against a defendant's insurance company for unfair insurance practices), *overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721, 725 (1994) (holding that a third party may join the insurer as a defendant as long as the claims against the insurer are bifurcated and stayed pending the resolution of the underlying claim). *But see, e.g., Wilson v. Wilson,* 121 N.C.App. 662, 468 S.E.2d 495, 497 (1996) (holding that a plaintiff who is neither an insured nor in privity may not maintain a claim against an insurance company for unfair trade practices); *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 146 (Tex.1994) (declining to extend insured's right to sue insurer for unfair settlement practices to third parties).

{13} Just as this Court did fifteen years ago in *Russell,* we are obliged to give full weight to the decision of our Legislature when it parted company with the majority and created a private right of action for those injured by an insurer's unfair claims practices. 107 N.M. at 11, 751 P.2d at 695. The text of Section 59A–16–30 leaves no impression that the Legislature intended to deny a remedy to third-party claimants. The statute states comprehensively, "Any person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages."

{14} We cannot infer that in choosing the words "any person," the Legislature meant to restrict recovery solely to first parties, those insured under the policy. In creating a separate statutory action, the Legislature had a remedial purpose in mind: to encourage ethical claims practices within the insurance industry. The private right of action is one means toward that end. Thus, if a third party is injured by one of the enumerated unfair claims practices, that party is no less a "person" falling within the ambit of legislative protection, as defined by the remedial purposes the Legislature envisioned. In *Russell,* we interpreted legislative intent broadly so as to achieve those same remedial purposes; nothing has occurred in the intervening fifteen years that would persuade us to change our mind. 107 N.M. at 13, 751 P.2d at 697.

{15} Despite New Mexico's broadly worded right of action in the Insurance Code, Allstate argues that the specific definitions of unfair conduct in Section 59A–16–20 indicate that the Legislature only intended to provide a remedy to insureds under first-party claims. Unlike the Model Act, which used the words "claims" and "claimants" in most of its definitions of unfair claims practices, our Legislature inserted the word "insured" before the word "claims;" it mandated reasonable efforts to settle "an insured's claims."[1] Allstate argues that this deliber-

---

1. For example, Section 59A–16–20(E), the definition most relevant to both Hovet's and Reynoso's claims, provides:

"Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with

ate change in wording, from "claims" to "insured's claims," indicates that the Legislature only intended to provide "insureds" with a private right of action for violations of the unfair claims practices section, at least with respect to reasonable efforts to settle "an insured's claims." Therefore, according to Allstate, only the Lujans and Waller could bring a private action against Allstate for failure to settle, even though it is the third-party claimants, Hovet and Reynoso, who are the most affected, and perhaps the only ones affected within the coverage limits of the policy, if Allstate fails to make good faith efforts to settle.

{16} The direct answer to Allstate's argument lies with *Russell*, 107 N.M. at 13, 751 P.2d at 697. In that case, an injured employee sought to sue his employer's workers' compensation insurance carrier for failure to make good-faith efforts to settle his claim. *Id.* at 10, 751 P.2d at 694. Like Allstate in the case before us, the worker's compensation insurer argued that employees were not "insureds" as specified in Section 59A–16–20(E), and that only the employer was an "insured" with standing to sue under the Insurance Code. This Court was not persuaded. Giving full effect to the intent and purpose of the unfair claims practices section, this Court concluded that the Legislature "intended to expand" the "traditional notion of 'insured' " to include employees who were intended beneficiaries of the insurance policy. *Russell*, 107 N.M. at 13, 751 P.2d at 697. By virtue of being an intended beneficiary, the employee in *Russell* became a statutory "insured," to whom the insurer owed a duty of fair settlement practices as described in the Insurance Code.

{17} We agree with the Court of Appeals that *Russell* controls this case. *Hovet*, 2003–NMCA–061, ¶ 25, 133 N.M. 611, 66 P.3d 980. *Russell* holds that a third party, who can demonstrate a special beneficiary status, may sue for unfair claims practices under the Insurance Code. 107 N.M. at 14, 751 P.2d at 698. In reaching this conclusion in *Russell*, this Court made a general observation "that

the legislature did not intend to limit Article Sixteen simply to the traditional notion of 'insured;' that is, it intended to expand that notion to parties other than those who may have signed a written contract of insurance beneath a blank reading 'insured.' " *Id.* at 13, 751 P.2d at 697 (citation omitted). By not restricting its holding and rationale to workers' compensation cases, *Russell* set the precedent for interpreting Sections 59A–16–20 and –30 broadly. Principles of stare decisis guide us in concluding, as did the Court of Appeals, *Hovet*, 2003–NMCA–061, ¶ 26, 133 N.M. 611, 66 P.3d 980, that we should apply the same reading and reasoning to Article 16 in the context of automobile liability insurance. *See Padilla v. State Farm Auto. Ins. Co.*, 2003–NMSC–011, ¶¶ 4–7, 133 N.M. 661, 68 P.3d 901 (concluding that stare decisis requires adherence to precedent and any departure demands special justification beyond merely citing new authority or relying on a different justification). Based on our reading of the statute as a whole, as in *Russell*, we believe that the Legislature intended to create a remedy for third-party claimants in just this situation. A private right of action for third parties who are victims of automobile accidents is consistent with a statutory scheme that was intended to benefit both insureds and third-party claimants. A private right of action for third-party claimants enforces the policy of the Insurance Code, which is to promote ethical settlement practices within the insurance industry.

{18} The very nature of automobile liability insurance, and the insurer's duty to defend, is that the "insured's claims" usually involve claims by someone else, a third party, against the insured. Except in cases where only the insurer and insured are involved, such as claims for uninsured motorist coverage or damage caused by the insured, the insurer settles an "insured's claims" under a liability policy by settling the underlying third-party claim against its insured within policy limits. In most cases, as a practical matter, a third-party claimant of an automo-

such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:

. . .

E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear."

bile liability policy, as opposed to a two-party indemnity policy, may be the only party directly interested in, or the one most affected by, an insurer's failure to exercise fair settlement practices, at least up to policy limits. It would be illogical to conclude that a third-party claimant with a *direct* interest in fair settlement practices may *not* sue under the Insurance Code, while only the insured, who may have little or no direct interest in settlement practices up to policy limits, could sue. For most automobile liability policies, such an interpretation would render unenforceable the fair and equitable settlement practices mandated by the Code. We decline to ascribe such a sterile intent to a legislative effort as comprehensive and public-spirited as the Insurance Code. Therefore, we conclude that the Legislature intended both the insured and the third-party claimant to be protected under Section 59A–16–20.

{19} Beyond the general policy of the Insurance Code to protect anyone injured by unfair insurance practices, a private right of action for third parties in this situation is consistent with the specific policy of the New Mexico Mandatory Financial Responsibility Act (MFRA). *See* NMSA 1978, § 66–5–201 to –239 (as amended through 2003). In New Mexico, no one may drive an automobile without liability insurance or comparable security for the protection of the motoring public. *See* § 66–5–208. The nature of compulsory automobile liability insurance, "is unlike that of indemnification insurance, which simply protects the owner of the vehicle or operator from loss." *Raskob v. Sanchez*, 1998–NMSC–045, ¶ 6, 126 N.M. 394, 970 P.2d 580; *cf. Russell*, 107 N.M. at 13, 751 P.2d at 697 (noting that workers' compensation is more than just indemnity between the insurer and the insured). Compulsory liability insurance "is intended to provide a benefit to the general public." *Raskob*, 1998–NMSC–045, ¶ 6, 126 N.M. 394, 970 P.2d 580. In *Breeden v. Wilson*, 58 N.M. 517, 524, 273 P.2d 376, 380 (1954), this Court said that "an insurance policy procured by force of legislative enactment inures to the benefit of any injured member of the public." Similarly, this Court wrote in *Allstate Insurance Co. v. Jensen*, 109 N.M. 584, 587, 788 P.2d 340, 343 (1990), that the legislative purpose of compulsory automobile liability insurance "is for the benefit of the public generally, innocent victims of automobile accidents, as well as the insured." We recently endorsed this view of the MFRA and its legislative policy in *Martinez v. Reid*, 2002–NMSC–015, ¶ 11, 132 N.M. 237, 46 P.3d 1237.[2]

{20} Third parties, having claims against drivers who are insured under compulsory automobile liability policies, are intended beneficiaries of those insurance policies no less than injured employees seeking compensation benefits from their employers' workers' compensation policies. Workers' compensation laws and compulsory automobile liability insurance laws can both be read "as legislative recognition of the victim as an intended beneficiary of the insurance policy." *See Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 273 (1981) (Abrahamson, J., concurring).

{21} Applying a fair and balanced interpretation of both legislative purpose and text, we conclude that the statutory duty under Section 59A–16–20(E), to attempt reasonable settlement efforts of an "insured's claims," includes in the context of automobile liability insurance attempting in good faith to settle the claim of a third party. Otherwise, with respect to policy-limit claims involving liability insurance, the statutory duty to settle would be read out of the statute. In *G & G Services, Inc. v. Agora Syndicate, Inc.*, 2000–NMCA–003, ¶ 23, 128 N.M. 434, 993 P.2d 751, our Court of Appeals rejected an analogous attempt to limit Section 59A–16–20(C), which involves the duty to investigate an "insureds' claims," to first-party claims. To read the statute so narrowly, the Court of

---

2. As a precautionary measure, we note that nothing in this opinion is intended to alter the holdings of either *Raskob* or *Martinez*. We rely on the *Raskob* line of cases solely for evidence of the public policy inherent in the MFRA as it informs our intended-beneficiary analysis under *Russell*. We emphasize that this is a statutory cause of action based in the Insurance Code. While the MFRA's expression of public policy supports this cause of action, we agree with the Court of Appeals that nothing in the MFRA creates its own duty to settle or alters the common law. *Hovet*, 2003–NMCA–061, ¶ 18, 133 N.M. 611, 66 P.3d 980.

Appeals concluded, would mean an insurer would have no statutory duty to investigate with regard to third-party liability claims. The court then said, "We see nothing in the statute that limits the duty to investigate only to first-party claims." *Id.* We adapt the *Agora* court's response to Allstate's present argument. We see nothing in the statute that limits the duty to attempt in good faith to effectuate prompt, fair and equitable settlements only to first-party claims.[3]

{22} Accordingly, we hold that when members of the driving public are twice made victims, first by actionable negligence of an insured driver and then by an insurance company's intransigence, then these victims will not be abandoned without a remedy. Our Legislature created both the right and the remedy. Consistent with *Russell*, it is our duty to enforce the Insurance Code so as to give full meaning to the Legislature's intent and purpose.

### Characteristics of the Third Party Right of Action

{23} Although we hold that third-party claimants under an automobile liability policy may sue the insurer for unfair settlement practices under the Insurance Code, considerations of sound public policy, as well as the text of the Code, require us to impose certain preconditions on a third-party right of action under Section 59A–16–30 for violation of Section 59A–16–20(E).

{24} First, our holding today addresses only automobile liability insurance required for the benefit of the public by the MFRA; we do not pass upon potential claims by putative beneficiaries of other kinds of mandatory liability insurance.[4] We observe in passing that compulsory automobile liability insurance under the MFRA has its own strong public policy and judicial precedent that affords third-party claimants a special, if not unique, place in our jurisprudence.

■ {25} Next, we are appropriately reminded by the parties and by their amicus curiae of the potential confusion that awaits us if we were to allow lawsuits for unfair settlement practices to proceed simultaneously with the underlying negligence litigation. Counsel for amicus New Mexico Trial Lawyers Association stipulated that unfair claims practices actions should be stayed until the negligence action is resolved, so as to avoid unfair prejudice to the insurer. We go a step further. We require that any such action for unfair claims practices based on failure to settle may only be filed *after* the conclusion of the underlying negligence litigation, and *after* there has been a judicial determination of fault in favor of the third party and against the insured.

■ {26} A third-party claimant's statutory cause of action against the insurer for unfair settlement practices must await the conclusion of the underlying negligence action between the claimant and the insured. *See Royal Globe*, 153 Cal.Rptr. 842, 592 P.2d at 332; *Moradi–Shalal*, 250 Cal.Rptr. 116, 758 P.2d at 72; *Jenkins*, 280 S.E.2d at 259. Thus, a third-party claimant may not sue both the insured and the insurer in the same lawsuit. Not only that, the third-party claimant will not even have an action under Section 59A–16–20(E), unless and until there

---

**3.** Allstate cannot complain that any such duty to third-party claimants is somehow foreign to the Insurance Code. Statutory provisions already impose upon insurance companies such as Allstate a duty to deal fairly with third-party claimants in their efforts to settle. According to NMSA 1978, Section 59A–5–26(C)(2) (1997), the Superintendent of Insurance is required to suspend or revoke an insurer's certificate of authority if the superintendent finds the insurer as a general business practice: "(a) has without just cause failed to pay, or delayed payment of, claims arising under its policies, whether the claim is in favor of an insured or in favor of a third person with respect to the liability of an insured to such third person; or (b) without just cause compels insureds or claimants to accept less than amount due them or to employ attorney or to bring suit against the insurer or such an insured to secure full payment or settlement of a claim."

**4.** *See, e.g.,* NMSA 1978, § 47–7C–13 (1982) (mandating liability insurance for condominium associations); NMSA 1978, § 56–6–5 (1953) (mandating insurance for agricultural warehousers); NMSA 1978, § 24–15–2 (1997) (mandating insurance for ski lift and tramway operators); NMSA 1978, § 57–25–3 (1996) (mandating insurance for carnival ride operators); NMSA 1978, § 58–1–67(B) (1963) (mandating insurance for banks "against burglary, robbery, theft and other similar insurable hazards").

has been a judicial determination of the insured's fault and the amount of damages awarded in the underlying negligence action. This precludes any claims under Section 59A–16–20(E) if the parties settle. Those electing to settle their claims without a judicial determination of liability waive any claims under the Insurance Code for unfair settlement practices. If we were to allow a third-party claimant who settles to later bring a claim against the insurance company for not settling, we would needlessly encourage serial litigation and frustrate the policy reasons, like finality, that encourage settlement. *See Moradi–Shalal,* 250 Cal.Rptr. 116, 758 P.2d at 73; *see also Envtl. Control, Inc. v. City of Santa Fe,* 2002–NMCA–003, ¶ 19, 131 N.M. 450, 38 P.3d 891.

 {27} The precondition of a prior judicial determination of liability should alleviate some of the concerns expressed by amicus New Mexico Defense Lawyers Association regarding ethical implications of compelling attorneys to appear as witnesses in their own cases. Their appearance, if any, should be confined to subsequent litigation, when ethically appropriate. Further, we hold that defense attorneys may not be named as party-defendants in claims brought under the unfair claims practices section. In New Mexico, defense attorneys do not owe opposing parties any common-law duty of care. *See Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.,* 106 N.M. 757, 750 P.2d 118 (1988). The same is true with respect to any statutory duties under the Insurance Code. The private right of action under the Insurance Code is limited by statute to violations by insurance companies and their agents; attorneys are not included. *See* § 59A–16–30.

{28} Finally, although plaintiffs and their amicus curiae ask us to conclude that punitive damages can be recovered for violations of the unfair claims practices section, we leave that question undecided at this time because of the lack of an opportunity for full briefing on this subject. We emphasize that in this opinion we are recognizing a statutory, not a common-law, cause of action. Therefore, in order to find a remedy for third-party claimants, we would have to look to the Insurance Code, which does not expressly provide for punitive damages. *See* § 59A–16–30; *Patterson,* 101 N.M. at 544, 685 P.2d at 399 ("[W]hen a right is created which did not exist at common law and for that right a remedy is by statute prescribed, the whole matter of right and remedy is within the statute and no part of either otherwise exists."); *First Nat'l Bank of Santa Fe v. Southwest Yacht & Marine Supply Corp.,* 101 N.M. 431, 434–35, 684 P.2d 517, 520–21 (1984) (holding that a plaintiff's remedies were limited by statute because wrongful replevin was a statutory cause of action and there was no action at common law); *Hittson v. Chi., R.I. & P. Ry. Co.,* 43 N.M. 122, 125, 86 P.2d 1037, 1038 (1939) ("[I]f a statute creates a new right for protection of the public where none existed before and at the same time provides an adequate remedy for enforcement of the right created, the remedy thus afforded is exclusive."). In a diversity action involving a first-party claim, a federal court interpreted the private right of action in Section 59A–16–30 as providing only for recovery of actual damages, costs and attorneys' fees, and not for punitive damages based on the unfair practices claim. *See Journal Publ'g Co. v. Am. Home Assur. Co.,* 771 F.Supp. 632, 636 (S.D.N.Y.1991).[5]

5. Under the Insurance Code, persons injured by unfair claims practices are entitled to recover "actual damages," supplemented when appropriate by costs and attorneys' fees. *See* § 59A–16–30. We note that UJI 13–1718, authorizing the jury to award punitive damages, applies to common-law bad-faith actions, and not to violations of Article 16 of the Insurance Code. *Compare* UJI 13–1718 NMRA 2003 *with* UJI 13–1706 NMRA 2003.

In similar contexts, the New Mexico Legislature has elsewhere provided for statutory punitive damages or treble damages. *See McLelland* *v. United Wis. Life Ins. Co.,* 1999–NMCA–055, ¶¶ 13–14, 127 N.M. 303, 980 P.2d 86 (holding that when treble damages are statutorily prescribed in the Unfair Practices Act, punitive damages are only available for independent common-law actions for fraud and not under the statute); *Hale v. Basin Motor Co.,* 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990) (holding that plaintiffs awarded both treble damages under the Unfair Practices Act and punitive damages for fraud must make an election between them); *Naranjo v. Paull,* 111 N.M. 165, 172, 803 P.2d 254, 261 (1990) (noting that the New Mexico Securities

As previously stated, we offer no opinion here with respect to the persuasiveness of these decisions.

{29} We also emphasize that the Insurance Code does not impose a duty to settle in all instances, nor does it require insurers to settle cases they reasonably believe to be without merit or overvalued. A violation occurs for "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." Section 59A–16–20(E). The insurer's duty is founded upon basic principles of fairness. Any insurer that objectively exercises good faith and fairly attempts to settle its cases on a reasonable basis and in a timely manner need not fear liability under the Code.

{30} With these preconditions in mind, we are not persuaded by Allstate's protestations that allowing these claims to proceed will somehow result in a "litigation extravaganza," with every negligence claim being followed by a second claim for unfair settlement practices. We think it is just as likely that if insurance companies are encouraged to deal fairly with both claimants and insureds, or face a lawsuit, then litigation will decrease and settlement will increase, just as the Legislature envisioned when it authored the Insurance Code. Further, the Insurance Code provides that a court may award attorneys' fees to an insurance company that prevails over a party bringing a groundless claim. Section 59A–16–30.[6] This statutory grant is intended to discourage frivolous litigation. See City of Farmington v. L.R. Foy Constr. Co., 112 N.M. 404, 407, 816 P.2d 473, 476 (1991).

## CONCLUSION

{31} We affirm the Court of Appeals and remand this case to the district court for further proceedings consistent with this opinion.

{32} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PATRICIO M. SERNA, Justice, CELIA FOY CASTILLO, Judge (by designation) and CYNTHIA A. FRY, Judge (by designation) (dissenting).

FRY, Judge (by designation; dissenting).

{33} I respectfully dissent. While I agree that insurers should treat third-party claimants fairly, evaluate claims reasonably, and settle expeditiously, I do not agree that the Insurance Code compels such conduct. In my view, the Insurance Code evidences an intent to treat insureds and claimants differently and cannot be read to impose on insurers a duty to third-party claimants that is equal to the duty insurers owe their insureds. In addition, I do not agree that Russell's holding applies outside the workers' compensation context. I would reverse the Court of Appeals.

{34} Our function in interpreting the Insurance Code is to determine and apply the Legislature's intent, not to impose our own notions of policy on the statutory language. See Rutherford v. Chaves County, 2003–NMSC–010, ¶ 11, 133 N.M. 756, 69 P.3d 1199 (observing that the Court's primary purpose in interpreting a statute is "to give effect to the Legislature's intent"). Indeed, because the notion of an insurer owing a duty to third-party claimants is contrary to the common law, we should exercise restraint in our interpretation of the statutory language. See Sims v. Sims, 1996–NMSC–078, ¶ 22, 122 N.M. 618, 930 P.2d 153 (stating that statutes in derogation of the common law "will be interpreted as supplanting the common law only if there is an explicit indication that the legislature so intended").

{35} The language in the Insurance Code compels me to conclude that the Legislature did not intend to impose on insurers a good faith duty to settle with third-party claimants. The majority focuses on the language

Act does not provide a remedy for punitive damages because it specifies only actual damages and not treble damages). Compare New Mexico Securities Act of 1986, NMSA 1978, § 58–13B–40 (1993) (which does not provide for punitive damages) with Anti–Trust Act, NMSA 1978, § 57–1–3 (1979) (which provides for treble damages).

6. Also, when reasonable settlement offers are rejected, plaintiffs can now recover double costs under Rule 1–068 NMRA 2004.

in Section 59A–16–30 granting "any person" who has suffered damages a private right of action against an insurer that has arguably violated the Code. *Supra* ¶¶ 13–14. However, Section 59A–16–30 states that "[a]ny person *covered by Chapter 59A, Article 16* " has such a right of action. (Emphasis added.) The emphasized language directs us to turn to Article 16 to see who is covered. When we turn to the definitions section of Article 16, we see that the Legislature attempted to distinguish between "claimants" and "insureds." The usual rules of statutory construction should cause us to conclude that the Legislature's use of "claimants" or "beneficiaries" in only three subsections out of fifteen, *see* § 59A–16–20(J), (K), and (L), signifies an intent to treat claimants and insureds differently. *See Cooper v. Chevron U.S.A., Inc.*, 2002–NMSC–020, ¶ 16, 132 N.M. 382, 49 P.3d 61 (explaining that statutory language is given "its ordinary and plain meaning unless the legislature indicates a different interpretation is necessary"). The majority sees no significance in this distinction evident in the statute's language and in fact finds that the Legislature did not intend to distinguish between claimants and insureds.

{36} The majority justifies its conclusion about legislative intent by relying on the nature of automobile liability insurance, the Court's decision in *Russell,* and the policy underlying the MFRA. I find no comfort in any of these rationales.

{37} First, while I agree that a third-party claimant under an automobile liability policy has a personal interest in the liability insurer's settlement practices, I do not think that such a claimant has a legally enforceable interest. Furthermore, I do not agree that the insured's interest in the insurer's settlement practices is as minor as the majority suggests. The insured's interest in settlement flows from well established mutual contractual duties and obligations. *See generally Azar v. Prudential Ins. Co. of Am.*, 2003–NMCA–062, 133 N.M. 669, 68 P.3d 909 (discussing the various duties owed by insurers and insureds to each other). In addition, even in connection with a policy-limits claim, an insured has a critical interest in the insurer's settlement practices. An insured's interest in avoiding protracted litigation and the stress of trial is as tangible as the personal interest a claimant has in obtaining compensation.

{38} Moreover, the majority reads Section 59A–16–20(E) as applying primarily to liability insurance. In my view, that subsection's language could as easily apply to uninsured/underinsured motorist coverage and indemnity coverage. The subsection defines as a prohibited practice "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear[.]" § 59A–16–20(E). Thus, this subsection would permit an insured to assert a claim against the insurer if the insurer did not attempt to settle the insured's UM claim promptly and fairly once the liability of the uninsured motorist had become reasonably clear. Similarly, an insured making a casualty claim could sue the insurer who resisted settling once it became clear that the claim was covered and the insurer was therefore liable to pay it. Consequently, I do not agree that this subsection's language supports the majority's interpretation of the Code.

{39} Second, I do not read *Russell* as compelling, or even supporting, the majority's interpretation of the Code. Even though *Russell's* language is very broad, the language must be viewed against the backdrop of *Russell's* facts, especially the fact that it was decided in the context of the Workers' Compensation Act. The Court in that case narrowly articulated the issue as "the applicability of the New Mexico Insurance Code, Article 16, 'Trade Practices and Frauds,' . . . to the Workers' Compensation Act." 107 N.M. at 10, 751 P.2d at 694. The Court did not have before it the question of whether the Code provides a bad faith cause of action to third-party claimants under an automobile liability insurance policy and in my view, it cannot be read as having addressed the issue. Our jurisprudence firmly establishes that "cases are not authority for propositions not considered." *Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (internal quotation marks and citation omitted). For this reason, I do not

believe the principle of stare decisis comes into play. *See Padilla,* 2003–NMSC–011, ¶ 5, 133 N.M. 661, 68 P.3d 901 (noting that, in contrast to the doctrine of stare decisis, "the principle that cases do not stand for propositions not considered . . . is intended to dissuade a later court from attributing meaning to an earlier opinion that was not contemplated by its drafters").

{40} Third, while I agree that the MFRA expresses the policy that third-party claimants are intended beneficiaries of liability insurance contracts, I see no need to look beyond the Insurance Code to the MFRA for clues to the meaning of the Code. The Legislature's choice of language in the Code makes it clear that the Legislature intended to afford greater rights to insureds than to claimants. In addition, as the Arizona Court of Appeals noted in *Leal v. Allstate Insurance Company,*

> Although accident victims may be intended beneficiaries of state-mandated insurance, this does not mean that they are the intended beneficiaries of every insurance policy provision. The duty of good faith and the obligation to consider the insured's interest are to encourage settlement within policy limits and to prevent financial disaster to the insured. They are not necessarily intended to deter litigation or to help claimants quickly collect payments.

199 Ariz. 250, ¶ 25, 17 P.3d 95 (Ariz.Ct.App. 2000) (citation omitted).

{41} In summary, I think Section 59A–16–20(E) provides only an insured with a cause of action to sue an insurer for "not attempting in good faith to effectuate prompt, fair and equitable settlements." In addition, I think existing safeguards work to promote the goal of encouraging insurers to deal fairly with third-party claimants in their settlement practices. For example, unreasonable insurers may have to pay claimants' costs pursuant to Rule 1–068 NMRA 2004, and prejudgment interest pursuant to NMSA 1978, § 56–8–4(B) (1993). Furthermore, the Insurance Code itself provides incentives for insurers to employ reasonable settlement practices with third-party claimants. *See* Section 59A–5–26(C)(2)(a) (requiring the superintendent of insurance to suspend or revoke an insurer's certificate of authority if the insurer, as a regular business practice, "has without just cause failed to pay, or delayed payment of, claims arising under its policies, whether the claim is in favor of an insured or in favor of a third person with respect to the liability of an insured to such third person"). I therefore respectfully dissent.